333 S.W.3d 815 (2010)
HERIBERTO SEDENO, P.A., Appellant,
v.
Genoveva MIJARES, Appellee.
No. 01-10-00374-CV.
Court of Appeals of Texas, Houston (1st Dist.).
December 23, 2010.
Kenneth O. Corley, Thompson & Knight, L.L.P., Houston, TX, for Appellant.
Jim Mac Perdue Jr., Perdue & Kidd, L.L.P., Houston, TX, for Appellee.
Panel consists of Justices KEYES, HIGLEY, and BLAND.

OPINION
EVELYN V. KEYES, Justice.
Appellant, Heriberto Sedeno, P.A. ("Sedeno, P.A."), appeals the trial court's denial of its motion to dismiss the claims of appellee, Genoveva Mijares, against Sedeno, P.A. under section 74.351 of the Texas Civil Practice and Remedies Code.[1] In *816 two issues, Sedeno, P.A. argues that it was entitled to a mandatory dismissal of Mijares's claims against it because (1) her claims against Sedeno, P.A. are health care liability claims that require service of an expert report under section 74.351 and (2) Mijares failed to timely file an expert report.
We reverse.

Background
Mijares filed her original petition on November 5, 2007, against Heriberto Sedeno, M.D. ("Dr. Sedeno") and Sedeno, P.A., alleging that Dr. Sedeno sexually assaulted her when she visited his office to address her problems with high blood pressure. Mijares pled causes of action for sexual assault and intentional infliction of emotional distress against Dr. Sedeno and against Sedeno, P.A., arguing that it was "jointly and severally liable for the actions of its officer and/or agent" Dr. Sedeno.
Mijares filed a second amended petition on February 25, 2008, adding a cause of action against both Dr. Sedeno and Sedeno, P.A. for gross negligence. She alleged that Sedeno, P.A. "allowed [Dr. Sedeno] to be unsupervised with female patients despite its knowledge of [Dr. Sedeno's] sexual proclivities" and that such gross negligence was the proximate cause of her injuries. On March 28, 2008, and again on September 26, 2008, the trial court entered a protective order in the civil case preventing discovery until the resolution of the criminal charges against Dr. Sedeno.[2] Trial of the civil case was set for November 2009. However, on October 30, 2009, Sedeno filed a suggestion of bankruptcy and the trial court proceedings were stayed.[3] Once the stay was lifted, trial was reset for May 2010.
On February 8, 2010, the parties entered into an agreed docket control order that set May 10, 2010, as the date by which all dispositive motions and pleas must be set for hearing or submission.
On February 12, 2010, Mijares filed her third amended petition, which raised for the first time claims of negligence against Sedeno, P.A. On March 29, 2010, Mijares filed her fourth amended petition, in which she alleged that, on the date of the assault, an employee of Sedeno, P.A. led Mijares into an examination room and left her there "alone and isolated" and that Dr. Sedeno "entered the examining room alone and unsupervised."
Mijares alleged that:
[Dr. Sedeno then] requested that [Mijares] pull down her skirt and bend over the examination table so that he could administer a B12 shot into her hip. Although confused by his request, [Mijares] followed [Dr. Sedeno's] orders.
While [Mijares] was bent over the examination table, [Dr. Sedeno] pulled his pants down and raped her. [Dr. Sedeno] subsequently ejaculated onto [Mijares] and her clothing and quickly left the room.
Mijares's fourth amended petition reasserted her causes of action for sexual assault and intentional infliction of emotional distress against Dr. Sedeno and Sedeno, P.A.
Mijares also alleged negligence against Sedeno, P.A., claiming that it "owed a duty to [Mijares] to exercise reasonable care to provide security and safety to [Mijares] *817 while she was visiting" the office. Her fourth amended petition stated that Sedeno, P.A. "retained control over the premises, business and safety operations of the offices," that it "had knowledge that other similar occurrences had occurred in the immediate vicinity," that it knew or should have known that Dr. Sedeno was "suffering from depression and other mental and psychiatric conditions that made him mentally or emotionally incompetent to perform the functions of an unsupervised physician [sic]," that Dr. Sedeno was "taking numerous sample medications from the clinic without a prescription" and "had a continuing problem of drug usage that affected his ability to function as a medical doctor," that Sedeno, P.A. knew or should have known that Dr. Sedeno "was not mentally or emotionally competent to safely perform unsupervised activity in the clinic with females" and that he "would not be able to respect the person and/or body of [Mijares] while she was isolated in an examining room," and that Sedeno, P.A. "owed a duty to [Mijares] not to place her in a situation that the risk of sexual abuse was heightened." The petition stated:
The assault described above occurred directly and proximately as a result of the negligence of [Sedeno, P.A.] in each and all of the following particulars:
1. In failing to keep proper safety and security measures on the premises;
2. In failing to have female clients accompanied by a female staff member at all times;
3. In failing to make the office secure from sexual predators;
4. In failing to properly monitor clients/patients while at the office;
5. In failing to provide proper supervision over its employee [Dr. Sedeno]; and
6. In creating an unsafe environment that allowed an unstable male to be alone with [Mijares] in an isolated room.
Mijares alleged a cause of action for invasion of privacy rights against Dr. Sedeno and Sedeno, P.A. based on Dr. Sedeno's actions. Finally, Mijares alleged a cause of action for gross negligence against Dr. Sedeno and Sedeno, P.A., again based on Dr. Sedeno's sexual assault and Sedeno, P.A.'s wrongful conduct in allowing Dr. Sedeno "to be unsupervised with female clients despite its knowledge of [Dr. Sedeno's] sexually deviant proclivities."
On May 5, 2010, Sedeno, P.A. filed its motion to dismiss, arguing that Mijares's claims were health care liability claims covered by Chapter 74 of the Civil Practice and Remedies Code, that Mijares had failed to file an expert report as required by section 74.351, and that, thus, Sedeno, P.A. was entitled to mandatory dismissal of Mijares's claims against it. Mijares responded, arguing in part that her claims were not health care liability claims and that Sedeno, P.A.'s motion to dismiss was untimely pursuant to an agreed docket control order filed with the trial court on February 8, 2010, which required all dispositive motions and pleas to be set for hearing or submission by May 10, 2010. Sedeno, P.A. unsuccessfully attempted to schedule a hearing on the motion to dismiss for May 10, 2010. The hearing was eventually held on May 12, 2010.
On May 12, 2010, the trial court signed an order denying Sedeno, P.A.'s motion to dismiss. The order contained the hand-written notation that the motion was denied "because the motion was not set for hearing in a timely manner under the agreed DCO."
On May 14, 2010, Sedeno, P.A. filed a motion for reconsideration, asking the trial court to reconsider its denial of the motion to dismiss, arguing that the docket control order does not affect its right to mandatory *818 dismissal, that there is no deadline for filing a motion to dismiss pursuant to section 74.351(b), that all of Mijares's claims were health care liability claims, and that she failed to timely file an expert report because the 120-day deadline runs from the filing of the original petition, not amended petitions.
On May 17, 2010, the trial court denied Sedeno, P.A.'s motion for reconsideration. The trial court stated that it believed the motion for reconsideration should be denied "for at least two reasons." The trial court stated its belief that Sedeno, P.A. waived its right to file the motion to dismiss, or, alternatively, that "the 120[-day] report period has likely not expired and thus [Sedeno, P.A.'s] argument is ... premature." Specifically, the trial court stated:
[T]he parties in this case have operated under the working assumption that the issues addressed by the Motion to Dismiss were raised for the first time no earlier than in [Mijares's] Third Amended Petition. The Third Amended Petition was filed only 93 days ago (approximately) and thus the 120[-day] expert report deadline has not passed. This is another reason to deny Sedeno P.A.'s Motion.
Sedeno, P.A. filed its notice of appeal on May 18, 2010.

Analysis
In its first issue, Sedeno, P.A. argues that Mijares's claims against it are health care liability claims requiring an expert report. In its second issue, Sedeno, P.A. argues that the trial court erred in denying its motion to dismiss because Mijares failed to timely file an expert report as required by section 74.351 of the Civil Practice and Remedies Code.

A. Standard of Review
We review a trial court's decision on a motion to dismiss a suit under Chapter 74 for an abuse of discretion. Am. Transitional Care Ctrs. v. Palacios, 46 S.W.3d 873, 875 (Tex.2001) (applying abuse of discretion standard under predecessor statute). However, to the extent resolution of this issue requires interpretation of the statute itself or resolution of another question of law, like whether the statute applies to a particular claim, we review under a de novo standard. Holguin v. Laredo Reg'l Med. Ctr., L.P., 256 S.W.3d 349, 352 (Tex.App.-San Antonio 2008, no pet.) (citing NCED Mental Health, Inc. v. Kidd, 214 S.W.3d 28, 32 (Tex.App.-El Paso 2006, no pet.) and Brown v. Villegas, 202 S.W.3d 803, 805 (Tex.App.-San Antonio 2006, no pet.)). Whether a claim is a health care liability claim is a question of law. Christus Spohn Health Sys. Corp. v. Sanchez, 299 S.W.3d 868, 873 (Tex.App.-Corpus Christi 2009, pet. denied); Holguin, 256 S.W.3d at 352.

B. Substantive Law
Section 74.351 of the Civil Practice and Remedies Code requires:
In a health care liability claim, a claimant shall, not later than the 120th day after the date the original petition was filed, serve on each party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom liability is asserted.
TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (Vernon Supp. 2010). If the plaintiff fails to serve an expert report, the trial court must, on the motion of the affected health care provider, dismiss the plaintiff's claim with prejudice and award attorney's fees. Id. § 74.351(b). Thus, the expert report requirements apply to claims that fall within the statutory definition of "health care liability claim." Holguin, 256 S.W.3d at 352 (citing Diversicare Gen. Partner, *819 Inc. v. Rubio, 185 S.W.3d 842, 847-48 (Tex. 2005)).
A health care liability claim is:
[A] cause of action against a health care provider ... for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.
TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(13) (Vernon 2005). A health care provider is:
[A]ny person, partnership, professional association, corporation, facility, or institution duly licensed, certified, registered, or chartered by the State of Texas to provide health care. ...
Id. § 74.001(a)(12).
A cause of action alleges a departure from accepted standards of medical care or health care if the act or omission complained of is an inseparable part of the rendition of medical services. Diversicare, 185 S.W.3d at 848. An alleged departure from "accepted standards of medical care or health care" implicates the professional standards of these respective care givers. Marks v. St. Luke's Episcopal Hosp., 319 S.W.3d 658, 662 (Tex.2010) (citing Diversicare, 185 S.W.3d at 850 (observing that "[t]he health care standard applies the ordinary care of trained and experienced medical professionals to the treatment of patients entrusted to them")). An alleged departure from "standards of ... safety" is implicated when the unsafe condition or thing causing the injury to the patient is an inseparable or integral part of the patient's care or treatment. Id. at 664.
A health care liability claim cannot be recast as another cause of action to avoid the requirements of Chapter 74. Diversicare, 185 S.W.3d. at 851. Thus we look to the underlying substance of a claim and not its form. Marks, 319 S.W.3d at 665-66; see also Diversicare, 185 S.W.3d at 851 (holding that "essence" of claim, not form of pleadings, controls determination of whether cause of action is health care liability claim).
In Diversicare, the Texas Supreme Court addressed the question of whether a nursing-home patient's suit against the nursing home for her sexual assault by another patient was a health care liability claim. 185 S.W.3d at 845. Specifically, the plaintiff in Diversicare alleged that the nursing home was negligent in failing to provide sufficient staff and supervision to prevent the assault. Id. at 845. In holding that the plaintiff's claims were health care liability claims, the supreme court observed that the nursing home provided services to its patients that included supervision of daily activities, routine examinations, monitoring of patients' physical and mental condition, administering medication, and meeting other "fundamental care needs." Id. at 849. It concluded that rendition of these services, including the monitoring and protection of the patient, as well as training and staffing policies, were "integral components of Diversicare's rendition of health care services." Id. at 850. The supreme court recognized that "professional decisions on supervising or restraining patients at health care facilities require medical judgment." Id. at 852-53 (citing, e.g., Bell v. Sharp Cabrillo Hosp., 212 Cal.App.3d 1034, 260 Cal.Rptr. 886, 896 (1989) ("[T]he competent selection and review of medical staff is precisely the type of professional service a hospital is licensed and expected to provide, for it is in the business of providing medical care to patients and protecting them from unreasonable risk of harm while receiving medical treatment. ... [T]he competent performance of this responsibility is "inextricably interwoven" with delivering competent *820 quality medical care to hospital patients.")).
Subsequently, other courts of appeals have applied the reasoning in Diversicare to claims arising from a health care provider's sexual assault of a patient. In Holguin, the San Antonio Court of Appeals held that while it "would defy logic to suggest that a sexual assault `is an inseparable part of the rendition of medical care' or a departure from accepted standards of health care" in regard to the plaintiff's suit against the individual health care provider, the plaintiff's suit for negligence and vicarious liability against the hospital was a health care liability claim under Chapter 74.[4] 256 S.W.3d at 353, 355-56. The court reasoned that it "need not determine if Holguin's claim is a safety claim `directly related to health care'"; rather, it relied on Diversicare in stating that it "need only determine if the claim is one that is a departure from accepted standards of safety applicable in the context of health or medical care." Id. at 355. It concluded that the underlying nature of Holguin's complaints was that the hospital failed to protect its patients, that such claims "necessarily implicate acceptable standards of safety pursuant to the definition of a health care liability claim," and that "[e]xpert testimony would be required for the safety claim asserted by Holguin." Id. (citing Diversicare, 185 S.W.3d at 851 ("[I]t is not within the common knowledge of the general public to determine the ability of patients in weakened conditions to protect themselves, nor whether a potential target of an attack in a healthcare facility should be better protected and by what means.")). The Holguin court also concluded that Holguin's claims alleged departures from accepted standards of health care because Holguin alleged that the hospital failed to properly hire, train, or supervise its staff. Id.
In Christus Spohn, the Corpus Christi Court of Appeals held that the plaintiff's negligence claims against the hospital implicated "the standards of care and safety contemplated by Chapter 74, and directly relate[d] to its rendering of health care" to the plaintiff. 299 S.W.3d at 874. The court held:
Decisions regarding the protection of patients and the supervision and monitoring of staff involve professional judgment, and "[i]t follows that proper staffing for the care and protection of patients is related to and part of the rendition of health care." Moreover, determining "the appropriate number, training, and certifications of medical professionals necessary to care for and protect patients in weakened conditions" requires health care expertise, which is but another indicator that staffing decisions are inseparable from the provision of health care. Thus, as here, when a patient is injured because of an alleged lapse in this professional decision-making, the lawsuit complaining of that injury is a health care liability claim.
Id. at 875 (citing Diversicare, 185 S.W.3d at 848, 851 and Holguin, 256 S.W.3d at 356) (internal citations omitted). The *821 court concluded that the gravamen of the plaintiff's claim against the hospital was that it "breached the standards of care and safety owed to [the plaintiff] by failing to protect her from the allegedly assaultive conduct of its nursing staff" and that the complained-of conduct "was an inseparable part of the care provided to [the plaintiff] as a patient." Id. Thus, the court concluded that the plaintiff's claims against the hospital were health care liability claims.[5]Id.; see also Kidd, 214 S.W.3d at 31 (holding that claims arising from mental health technician's alleged sexual assault of patient were health care liability claims); Oak Park, Inc. v. Harrison, 206 S.W.3d 133, 135-41 (Tex.App.-Eastland 2006, no pet.) (holding that claims against treatment center arising from nurses' and counselors' alleged physical assault of patient were health care liability claims); Buck v. Blum, 130 S.W.3d 285, 291 (Tex. App.-Houston [14th Dist.] 2004, no pet.) (holding patient's claims against owners of medical clinic for negligence arising from alleged assault and battery by neurologist were health care liability claims because claims alleged that medical clinic "violated the standards of care related to supervision of a medical doctor performing a medical examination and the institution of procedures governing medical examinations").

C. Health Care Liability Claims
Here, Sedeno, P.A. argues that beginning with her second amended petition, filed February 25, 2008, Mijares alleged breaches of the standard of care by Sedeno, P.A. in every pleading, including her fourth amended petition, which was the "live" pleading at the time Sedeno, P.A. moved to dismiss the claims against it.
In her second amended petition, Mijares alleged gross negligence against Sedeno, P.A. for allowing Dr. Sedeno "to be unsupervised with female patients despite its knowledge of [Dr. Sedeno's] sexual proclivities." In her third amended petition, Mijares alleged negligence against Sedeno, P.A. for its own actions, arguing, among other things, that it was negligent in failing to keep proper safety and security measures on the premises, in failing to have female patients accompanied by a female staff member, in failing to properly monitor patients while at the office, and in failing to provide proper supervision over Dr. Sedeno.
We conclude that, as in Holguin and Christus Spohn, the gravamen of these negligence claims against Sedeno, P.A. is that it breached the standards of care and safety owed to Mijares by failing to protect her from the allegedly assaultive conduct of Dr. Sedeno. See Christus Spohn, 299 S.W.3d at 875; Holguin, 256 S.W.3d at 355-56. These claims implicate Sedeno, P.A.'s professional decisions regarding the monitoring and protection of the patient and its training and staffing policies and thus are "integral components" of Sedeno, P.A.'s rendition of health care services. See Diversicare, 185 S.W.3d at 850.
Mijares argues that Sedeno, P.A. is not a healthcare institution and should not be afforded the protections granted to healthcare *822 institutions. She argues that Sedeno, P.A., "as a lease holder of the premises, did not make the same judgment about the care, treatment and protections of individual patients as a health care institution" and that "if any judgments as to health care were involved they would have been made by Dr. Sedeno." However, Mijares alleged separate negligence and gross negligence claims against Sedeno, P.A. for its own failures distinct from the alleged sexual assault committed by Dr. Sedeno that do implicate a professional association's judgments regarding care, treatment, and protection of an individual patient.
We acknowledge that Sedeno, P.A. does not meet the definition of a health care institution. See TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(11) (providing that health care institution includes, among others, hospitals and nursing homes, but not listing doctor's offices or outpatient medical clinics). However, it is clearly a health care provider. See id. § 74.001(12) (providing that "health care provider" includes, among others, any professional association or health care institution). Section 74.351 requires service of an expert report on "each physician or health care provider against whom liability is asserted," and does not make a distinction between health care providers generally and a health care institution. See id. § 74.351(a). Thus, the provisions of section 74.351 apply to Sedeno, P.A., as does case law construing that section. Therefore, we conclude that Mijares's negligence claims are health care liability claims.[6]See Diversicare, 185 S.W.3d at 850.
We sustain Sedeno, P.A.'s first issue.

D. Timely Expert Report
In its second issue, Sedeno, P.A. argues that the trial court erred in denying its motion to dismiss because Mijares failed to timely file an expert report, and thus it was entitled to the mandatory dismissal and attorneys fees provided for in section 74.351(b).
Section 74.351(b) provides:
If, as to a defendant physician or health care provider, an expert report has not been served within the period specified by Subsection (a), the court, on the motion of the affected physician or health care provider, shall ... enter an order that:
(1) awards to the affected physician or health care provider reasonable attorney's fees and costs of court incurred by the physician or health care provider; and
(2) dismisses the claim with respect to the physician or health care provider with prejudice to the refiling of the claim.
TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b). "If a claimant fails to serve the report with the curriculum vitae on or before the statutory deadline, and the affected *823 physician or health care provider files a motion to dismiss the claim under section 74.351(b), the court has no alternative but to dismiss the claim with prejudice." Herrera v. Seton Nw. Hosp., 212 S.W.3d 452, 457 (Tex.App.-Austin 2006, no pet.).
Mijares argues that even if we construe her claims as health care liability claims, Sedeno P.A.'s motion to dismiss was premature because the 120-day deadline had not yet passed. Mijares argues that the deadline begins to run from the filing of the petition that first alleges a health care liability claim, while Sedeno, P.A. argues that the 120-day filing deadline runs from the filing of the original petition. Because we have already determined that Mijares's second amended petition, which was filed February 25, 2008, and alleged gross negligence against Sedeno, P.A. for allowing Dr. Sedeno to treat her while he was unsupervised, constituted a health care liability claim, we need not address this argument.[7] The 120-day deadline had passed regardless of whether we calculate the deadline from the filing of Mijares's original petition or her second amended petition.
Mijares also argues that Sedeno, P.A. "failed to preserve any error for review by not pleading the affirmative defense of Chapter 74." However, the authorities Mijares cited in her brief do not support her contention that the dismissal provision in section 74.351 is an affirmative defense that must be pleaded by the defendant. See Tsai v. Wells, 725 S.W.2d 271, 275 (Tex.App.-Corpus Christi 1986, writ ref'd n.r.e.) (holding that damage limit in predecessor to chapter 74 was affirmative defense and that defendant's failure to plead statutory damage limit on judgment against physician operated as waiver to complain on appeal); Webster v. Johnson, 737 S.W.2d 884, 889 (Tex.App.-Houston [1st Dist.] 1987, writ denied) (holding same). Nor could we find any authority suggesting that Sedeno, P.A. was required to file any additional pleadings to invoke its right to file a motion to dismiss pursuant to section 74.351.
Mijares also argues that Sedeno, P.A.'s motion to dismiss was untimely because Sedeno, P.A. "waited 912 days after it was served with [Mijares's] Original Petition" to file its motion to dismiss. Chapter 74 provides no deadline for filing a motion to dismiss pursuant to section 74.351, and the Texas Supreme Court has specifically held that there is no statutory deadline to file a motion to dismiss for failure to timely file an expert report. See Jernigan v. Langley, 111 S.W.3d 153, 156 (Tex.2003) (holding, under predecessor to current statute, that defendant who waited almost two years to move to dismiss case while participating in discovery and filing motion for summary judgment and other pleadings did not waive his right to move for dismissal for failure to comply with expert report requirement); see also Poland v. Grigore, 249 S.W.3d 607, 616 & n. 7 (Tex. *824 App.-Houston [1st Dist.] 2008, no pet.) (holding "[S]ection 74.351(b)which establishes the consequences for failure [to timely serve] an expert reportcontains no deadline by which a defendant physician or health care provider may complain") (citing Empowerment Options, Inc. v. Easley, No. 09-06-148-CV, 2006 WL 3239527, at *4 (Tex.App.-Beaumont Nov. 9, 2006, pet. denied) (mem. op.) (noting in dictum that "Chapter 74 imposes no deadline for filing a motion to dismiss" for failure to timely serve an expert report) and Packard v. Miller, No. 07-06-0454-CV, 2007 WL 1662279, at *2 (Tex.App.-Amarillo May 31, 2007, pet. denied) (mem. op.) (holding that defendant who waited almost 18 months to move to dismiss for failure to timely serve expert report was not equitably estopped from seeking dismissal because "[t]he Legislature did not include an explicit deadline for the filing of a motion to dismiss" under section 74.351)).
Finally, Mijares argues that Sedeno, P.A.'s motion to dismiss was untimely pursuant to the agreed docket control order that required all dispositive motions to be set for hearing or submission by May 10, 2010. Sedeno, P.A. argues that on May 7, 2010, the trial court tentatively set its motion for a hearing on May 10, 2010, and thus it was timely under the docket control order, regardless of Mijares's refusal to appear on May 10, 2010Mijares cited Sedeno, P.A.'s failure to comply with notice provisionsthat postponed the hearing to May 12, 2010.
Civil Practice and Remedies Code section 74.002(a) provides, "In the event of a conflict between this chapter and another law, including a rule of procedure or evidence or court rule, this chapter controls to the extent of the conflict." TEX. CIV. PRAC. & REM.CODE ANN. § 74.002(a) (Vernon 2005). Furthermore, in Spectrum Healthcare Resources, Inc. v. McDaniel, the Texas Supreme Court held that a generic docket control order agreed to by the parties, which made no reference to the deadlines imposed by Chapter 74, did not establish the intent of the parties to extend the statutory expert report deadline. 306 S.W.3d 249, 253-54 (Tex.2010). The supreme court reasoned that the "section 74.351 threshold expert report has a unique purpose separate and apart from the procedural rules relating to discovery and typical expert reports" and that expert reports filed pursuant to Chapter 74 cannot be categorized as either a testifying or consulting-only retained expert under the Rules of Civil Procedure. Id. at 253-54. Thus, the court concluded that for an agreed docket control order to extend the deadline to file an expert report, the order must explicitly indicate the parties' intention to extend the deadline and reference that specific deadline. Id. at 254.
Admittedly, this case is different from Spectrum Healthcare in that Mijares is arguing that the docket control order imposed a deadline for filing a motion to dismiss pursuant to section 74.351. However, the reasoning in Spectrum Healthcare still applies because the mandatory dismissal provision in section 74.351(b) serves a different function from other grounds for dismissal generally available under the Rules of Civil Procedure, just as the expert report requirement of section 74.351(a) serves a different function from other types of expert designations. Here, the parties made no indication that they intended for the agreed docket control order to affect their rights under Chapter 74. Thus, Sedeno, P.A.'s right to mandatory dismissal in the event that Mijares failed to timely file an expert report was not affected by the agreed docket control order. See TEX. CIV. PRAC. & REM.CODE § 74.002(a); Spectrum Healthcare, 306 S.W.3d at 253-54.
*825 We conclude that the trial court erred in denying Sedeno, P.A.'s motion to dismiss the negligence and gross negligence claims against it because it showed that Mijares failed to timely serve an expert report on these health care liability claims. See Herrera, 212 S.W.3d at 457 ("If a claimant fails to serve the report with the curriculum vitae on or before the statutory deadline, and the affected physician or health care provider files a motion to dismiss the claim under section 74.351(b), the court has no alternative but to dismiss the claim with prejudice."). The trial court properly denied dismissal of Mijares's intentional tort and exemplary damages claims against Sedeno, P.A. based upon its vicarious liability for Dr. Sedeno's sexual assault and intentional infliction of emotional distress.
We sustain Sedeno, P.A.'s second issue.

Conclusion
We reverse the order of the trial court and render judgment dismissing Mijares's negligence and gross negligence claims against Sedeno, P.A. All other claims against Dr. Sedeno and Sedeno, P.A. remain pending in the trial court.
NOTES
[1] Chapter 74 of the Civil Practice and Remedies Code governs medical liability. See TEX. CIV. PRAC. & REM.CODE ANN. §§ 74.001-74.507 (Vernon 2005 & Supp. 2010). Section 74.351 requires a plaintiff asserting a health care liability claim to file an expert report for each health care provider against whom liability is asserted within 120 days of filing an original petition. Id. § 74.351(a) (Vernon Supp. 2010). If the plaintiff fails to file such an expert report, the court is required to dismiss the suit and grant attorney's fees on the defendant's motion. Id. § 74.351(b).
[2] Dr. Sedeno was eventually sentenced to community supervision for indecent exposure regarding his conduct toward Mijares.
[3] The suggestion of bankruptcy stated that "Heriberto Sedeno, Heriberto Sedeno, M.D. also known as Heriberto Sedeno, P.A. ("Debtor")" filed for Chapter 7 bankruptcy in the Southern District of Texas.
[4] In Holguin, the plaintiff sued Morales, the allegedly tortious employee of Laredo Regional Medical Center, for his negligent failure to "control his sexual urges" and asserted claims against Laredo Regional for vicarious liability and for its own negligence in failing to protect Holguin from Morales. Holguin v. Laredo Reg'l Med. Ctr., L.P., 256 S.W.3d 349, 353 (Tex.App.-San Antonio 2008, no pet.). The San Antonio Court of Appeals held that the vicarious liability claim, based on Morales's negligence, was "nothing more than a recasting of" the direct negligence claim against Laredo Regional. Id. at 354. Holguin did not sue Morales for the intentional tort of sexual assault and assert vicarious liability against Laredo Regional arising out of that claim.
[5] In Christus Spohn, Sanchez also sued two employees who allegedly committed the sexual assault for assault and intentional infliction of emotional distress. Christus Spohn Health Sys. Corp. v. Sanchez, 299 S.W.3d 868, 872 (Tex.App.-Corpus Christi 2009, pet. denied). The Corpus Christi Court of Appeals held that the underlying nature of these claims "rests squarely in these intentional actions that had `nothing to do with a health care provider's lapse in professional judgment or failure to protect a patient due to an absence of supervision or monitoring.'" Id. at 874 (quoting Holguin, 256 S.W.3d at 354). Sanchez did not claim that the hospital, through its employees, committed sexual assault. See id. at 875 ("However, unlike appellees' claims against [the employees], appellees' claims against Spohn-Shoreline are based on negligence....").
[6] Mijares also argues that Sedeno, P.A. is liable for Dr. Sedeno's acts because Dr. Sedeno is the sole officer of Sedeno, P.A. However, in the claims at issue hereher negligence and gross negligence claims against Sedeno, P.A.Mijares did not allege that Sedeno, P.A., through its employee, committed the sexual assault. Rather, she alleged claims against Sedeno, P.A. for its own wrongful, negligent acts separate from those of Dr. Sedeno. Thus, the underlying nature of Mijares's complaint against Sedeno, P.A. in her negligence claims is that it failed to properly exercise medical judgment to protect its patients and provide proper supervision of its employees. See Christus Spohn, 299 S.W.3d at 875 (holding that "despite the recasting of their claim as common law vicarious liability, the underlying nature of appellees' claim is, nonetheless, that `through lapses in professional judgment and treatment [Spohn-Shoreline] negligently allowed the sexual assault to occur'" and finding that such claims were still properly considered health care liability claims requiring expert report).
[7] Mijares argues in her appellate brief that the potential health care liability claims were raised for the first time in her third amended petition and that Sedeno, P.A.'s motion to dismiss specifically referenced the allegations in the fourth amended petition, and thus, "the deadline to serve a report, at its earliest, was June 12, 2010." We disagree. It is well-settled that a plaintiff cannot circumvent the expert report requirement by artfully pleading a health care liability claim based on negligence as some other cause of action. Diversicare Gen. Partner, Inc. v. Rubio, 185 S.W.3d 842, 851 (Tex.2005); Christus Spohn, 299 S.W.3d at 875. Mijares's claim for gross negligence against Sedeno, P.A. implicated its professional decisions regarding the monitoring and protection of the patient and its staffing policies, just as her general negligence claims did, and thus implicated an "integral component" of Sedeno, P.A.'s rendition of health care services. See Diversicare, 185 S.W.3d at 850.