

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-22-00097-CV

Sharyn **DACBERT**,
Appellant

v.

**MEDICAL CENTER OPHTHALMOLOGY ASSOCIATES, L.L.P.** and Michael Singer,
Appellees

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2020-CI-06670
Honorable Martha Tanner, Judge Presiding

Opinion by:　Luz Elena D. Chapa, Justice

Sitting:　　Luz Elena D. Chapa, Justice
　　　　　Beth Watkins, Justice
　　　　　Sandee Bryan Marion, Chief Justice (Ret.)[1]

Delivered and Filed: November 22, 2023

AFFIRMED IN PART; REVERSED AND REMANDED IN PART

Appellant Sharyn Dacbert challenges the trial court's order dismissing her claims with

prejudice against appellees Medical Center Ophthalmology Associates, L.L.P. and Michael Singer

for failure to file an expert report pursuant to section 74.351 of the Texas Civil Practice and

Remedies Code. On appeal, Dacbert argues she was not required to file an expert report because

her claims are not health care liability claims subject to section 74.351. On cross-appeal, Medical

---

[1] The Honorable Sandee Bryan Marion, Chief Justice (Retired) of the Fourth Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE §§ 74.003, 75.002, 75.003.

Center Ophthalmology and Singer argue the trial court improperly denied them attorney's fees. Because we conclude Dacbert's claims are health care liability claims, we affirm the portion of the trial court's order dismissing with prejudice Dacbert's claims. We also reverse the portion of the trial court's order denying Medical Center Ophthalmology and Singer's attorney's fees and remand the cause to the trial court for further proceedings consistent with this opinion.

BACKGROUND

In April 2018, Dacbert visited Singer for a scheduled eye exam at his office owned by his medical practice, Medical Center Ophthalmology. During the exam, when Singer began moving the phoropter into position to examine Dacbert's eye, the phoropter fell and injured Dacbert. The phoropter was attached to the exam room wall. On April 6, 2020, Dacbert sued Medical Center Ophthalmology and Singer alleging claims for premises liability and gross negligence. Specifically, she alleged the defendants had a duty to keep the premises in a reasonably safe condition, and they knew or should have known about the unreasonable risk of harm caused by the condition of the office equipment. According to Dacbert, the defendants' conduct caused her to suffer physical and mental pain and anguish and incur medical expenses now and in the future.

Medical Center Ophthalmology and Singer answered on September 17, 2020 by filing a general denial, demanding strict proof of Dacbert's health care claims. A year later, they moved to dismiss Dacbert's claims for failure to file an expert report in accordance with section 74.351; they also sought attorney's fees. Dacbert filed a response, arguing section 74.351 did not apply because her claims are based on premises liability, and if section 74.351 applied, Medical Center Ophthalmology and Singer waived their right to dismissal by not objecting and asserting the case falls under section 74.351. On January 18, 2022, the trial court dismissed with prejudice Dacbert's claims and denied Medical Center Ophthalmology and Singer attorney's fees. This appeal followed.

**ANALYSIS**

***Standard of Review and Applicable Law***

Under section 74.351, a claimant who asserts a "'health care liability claim'" must "serve one or more expert reports describing the applicable standards of care, how the defendant's conduct failed to meet those standards, and how those failures caused the claimant harm." *Collin Creek Assisted Living Ctr, Inc. v. Faber*, 671 S.W.3d 879, 885 (Tex. 2023) (quoting TEX. CIV. PRAC. & REM. CODE § 74.351(a)). "If a claimant fails to serve a compliant report within 120 days after the defendant files its original answer, the trial court must dismiss the claim with prejudice and award the defendant attorney's fees and costs." *Id*. (citing TEX. CIV. PRAC. & REM. CODE § 74.351(b)).

In general, we review a trial court's ruling on a motion to dismiss a claim pursuant to section 74.351 for an abuse of discretion. *Rosemond v. Al–Lahiq*, 331 S.W.3d 764, 766 (Tex. 2011). However, whether a claim is a health care liability claim and section 74.351 applies is a question of law we review de novo. *Collin Creek*, 671 S.W.3d at 885; *Loaisiga v. Cerda*, 379 S.W.3d 248, 254–55 (Tex. 2012). This determination is made by carefully defining the universe of relevant facts. *Collin Creek*, 671 S.W.3d at 885. We "must focus on the set of operative facts 'underlying the claim' that are relevant to the alleged injury, not on how 'the plaintiff's pleadings describ[e] the facts or legal theories asserted.'" *Id.* (alteration in original). "If those facts '*could* support claims against a physician or health care provider for departures from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care,' then [section 74.351] applies 'regardless of whether the plaintiff alleges the defendant is liable for breach of any of those standards.'" *Id*. (quoting *Loaisiga*, 379 S.W.3d at 255). We draw the facts from the "entire court record," including "pleadings, motions and responses, and relevant evidence properly admitted." *Id*. at 886 (quoting *Loaisiga*, 379 S.W.3d at 258) (internal

quotation marks omitted). Artful pleading will not avoid section 74.351's application to ordinary negligence or premises liability claims. *Id*.

Whether a set of operative facts could support a health care liability claim requires an examination of the statutory language used to define a health care liability claim. *Id*. (citing *Rogers v. Bagley*, 623 S.W.3d 343, 350 (Tex. 2021)). Section 74.001(a)(13) defines a health care liability claim as

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13). This definition includes the following essential elements: "(1) the defendant is a physician or health care provider; (2) the claim is for treatment, lack of treatment, or another departure from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's act or omission proximately caused the claimant's injury or death." *Collin Creek*, 671 S.W.3d at 886.

As to the second element, there are "various tests for determining whether the set of operative facts underlying a claim concerns an alleged departure from accepted standards of (1) medical care, (2) health care, (3) safety, or (4) related professional or administrative services." *Id*. at 887. And, many claims implicate multiple standards to different degrees. *See id*. (stating many claims may implicate more than one standard and in some cases, it may be unclear which standards is implicated more). But, "when the operative facts concern alleged departures from (1) health care standards that implicate safety; (2) safety standards with a 'direct' relationship to the provision of health care; and/or (3) safety standards with a 'substantive nexus' to the provision of

- 4 -

health care, parties and courts may address the second element using [the analysis set out in *Ross v. St. Luke's Episcopal Hospital*]." *Id*.

Under *Ross*, "there must be a substantive nexus between the safety standards allegedly violated and the provision of health care." 462 S.W.3d 496, 504 (Tex. 2015). This "nexus must be more than a 'but for' relationship." *Id*. The pivotal issue "is whether the standards on which the claim is based implicate the defendant's duties as a health care provider, including its duties to provide for patient safety." *Id*. at 505. In making this determination, we consider the following nonexclusive factors ("the *Ross* factors"):

1. Did the alleged negligence of the defendant occur in the course of the defendant's performing tasks with the purpose of protecting patients from harm;

2. Did the injuries occur in a place where patients might be during the time they were receiving care, so that the obligation of the provider to protect persons who require special, medical care was implicated;

3. At the time of the injury was the claimant in the process of seeking or receiving health care;

4. At the time of the injury was the claimant providing or assisting in providing health care;

5. Is the alleged negligence based on safety standards arising from professional duties owed by the health care provider;

6. If an instrumentality was involved in the defendant's alleged negligence, was it a type used in providing health care; and

7. Did the alleged negligence occur in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies.

*Id*. In addition to these factors, the Texas Supreme Court has observed "[t]he breadth of the statute's text essentially creates a presumption that a claim is [a health care liability claim] if it is against a physician *or* health care provider and is based on facts implicating the defendant's

conduct during the course of a patient's [medical] care, treatment, *or* confinement." *Collin Creek*, 671 S.W.3d at 890 (alterations in original) (quoting *Loaisiga*, 379 S.W.3d at 256).

### *Dacbert's Claims*

Dacbert contends when considering the *Ross* factors, her claims are not health care liability claims under section 74.351. According to Dacbert, the defendants' alleged negligence—i.e., the failure to maintain the wall—did not occur in the course of performing tasks with the purpose of protecting patients from harm. The alleged negligence was also not based on safety standards arising from professional duties owed by the defendants. Thus, an expert report by a health care professional would not address the appropriate standard of care—the maintenance of the wall—pertinent to this suit.

Medical Center Ophthalmology and Singer, however, argue Dacbert's claims against them arise out of the treatment provided during an eye exam, making her claims fall under section 74.351. They contend Dacbert's suit is based on facts implicating Singer's conduct, specifically, his use of the phoropter during Dacbert's eye exam. They further contend the fact Dacbert sued a physician and health care provider raises a rebuttable presumption that her claims are health care liability claims. As to the *Ross* factors, they argue applying each of the factors shows how Dacbert's claims are substantively tied to a health care liability claim, requiring Dacbert to file the report to avoid dismissal.

We begin our analysis by recognizing there is a rebuttable presumption Dacbert's claims are health care liability claims because they are made against a physician and health care provider and are based on facts implicating Singer's conduct during the course of Dacbert's eye exam. *See Collin Creek*, 671 S.W.3d at 890; *Loaisiga*, 379 S.W.3d at 256. We must next "consider the entire record to identify the set of operative facts underlying the claims that is relevant to the alleged injury." *Collin Creek*, 671 S.W.3d at 889. Here, those facts implicate the condition of the exam

room located in a medical office owned by Medical Center Ophthalmology; the condition of the medical equipment (the phoropter) attached to the exam room wall; Singer's handling of the phoropter when moving it into position during Dacbert's eye exam; and Dacbert's status as a patient receiving health care in a medical office setting. *See id*.

When applying the *Ross* factors to these facts, we conclude several of the factors are implicated. Here, the second, third, and fourth factors are satisfied because Dacbert's injury occurred when she, as a patient, was receiving health care from Singer in an exam room at Medical Center Ophthalmology's office, thereby implicating the provider's obligation to protect her. *See id*. at 891–92 (holding second and third factor favor finding of health care liability claim because injury occurred at health care facility when patient was receiving care); *Phillips v. Jones*, No. 05-15-00005-CV, 2016 WL 80561, at *2–3 (Tex. App.—Dallas Jan. 7, 2016, no pet.) (mem. op.) (reasoning injury occurring in health care provider's examination room with equipment typically used in providing health care implicates provider's obligation to provide safe environment for patients).

As to the fifth factor, the alleged negligence was based on safety standards arising from Singer and Medical Center Ophthalmology's professional duties to maintain a safe exam room and eye exam equipment. *See Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 664 (Tex. 2010) (recognizing claims regarding unsafe or defective condition of medical equipment specific to a particular treatment are health care liability claims). The sixth factor also weighs in favor of classifying Dacbert's claims as health care liability claims because the phoropter involved was a medical instrument commonly used in providing routine eye exams. And, finally, regarding the seventh factor, the alleged negligence occurred due to Singer and Medical Center Ophthalmology's alleged failure to take the action necessary to comply with safety-related requirements concerning the exam room and eye exam equipment.

Accordingly, when considering the set of operative facts in light of the *Ross* factors, we conclude Dacbert's claims against Singer and Medical Center Ophthalmology bear a substantive nexus to the provision of health care, categorizing her claims as health care liability claims. *See Collin Creek*, 671 S.W.3d at 887–88; *Ross*, 462 S.W.3d at 504–05. Concluding so, we remain mindful these facts need only be capable of supporting claims against Singer and Medical Center Ophthalmology for departures from accepted safety standards even though Dacbert may not have specifically alleged they were liable for breaching such standards. *See Collin Creek*, 671 S.W.3d at 885. In this case, the standards on which Dacbert's claims are based implicate Singer and Medical Center Ophthalmology's duties as health care providers to maintain safe medical equipment and provide for patient safety. *See id.* We therefore hold the trial court did not err in granting Singer and Medical Center Ophthalmology's motion to dismiss the claims for Dacbert's failure to file an expert report. *See id.*

### *Waiver*

Dacbert next asserts Medical Center Ophthalmology and Singer waived their right to dismissal by not objecting and asserting the case falls under section 74.351 in their answer or any subsequent pleadings. Specifically, Dacbert claims Medical Center Ophthalmology and Singer did not object to her failure to comply with other requirements outlined in Chapter 74 for health care liability claims; instead, they waited to invoke the dismissal provision of Chapter 74. According to Dacbert, such conduct was inconsistent with their intention to rely on their right to seek dismissal under section 74.351.

Medical Center Ophthalmology and Singer, however, argue they did not waive their right to seek dismissal under section 74.351. They contend Dacbert's failure to comply with any of the other Chapter 74 requirements is not an affirmative defense they were required to plead. They further contend although they were not required to reference Chapter 74 in their answer, they filed

a general denial demanding "strict proof of this health care claim." Finally, they argue they did not engage in any action, including discovery, while they waited for the required expert report because Chapter 74 stayed discovery.

"Waiver is defined as 'an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right.'" *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) (per curiam). When determining whether a defendant's action or inaction amounts to waiver, the Texas Supreme Court has recognized Chapter 74 does not impose a deadline for filing a motion to dismiss for failure to file an expert report. *Id.*; *see ETMC EMS v. Dunn*, No. 12-19-00152-CV, 2020 WL 562971, at *7 (Tex. App.—Tyler Feb. 5, 2020, pet. denied) (mem. op.). "The mere fact that a defendant waits to file a motion for dismissal under section [74.351] is insufficient to establish waiver unless the defendant's silence or inaction shows an intent to yield the right to dismissal[.]" *Jernigan*, 111 S.W.3d at 157 (applying former version of section 74.351). "[T]o establish an intent to waive the right to dismissal under section [74.351], the defendant's silence or inaction must be inconsistent with the intent to rely upon the right to dismissal." *Id.*

Here, Dacbert has not shown Medical Center Ophthalmology and Singer acted inconsistently with their intent to rely upon their right to dismissal. The mere fact they decided to wait to move for dismissal until Dacbert's expert report deadline expired is insufficient to establish waiver. *See Jernigan*, 111 S.W.3d at 156; *Dunn*, 2020 WL 562971, at *7. And contrary to Dacbert's assertion they waived their right to dismissal by failing to object and assert the case falls under section 74.351, there is no authority requiring a defendant to plead noncompliance with Chapter 74 as an affirmative defense. *See Dunn*, 2020 WL 562971, at *7 ("[T]he grounds for dismissal under Section 74.351 are not affirmative defenses, which a defendant is required to plead."); *Heriberto Sedeno, P.A. v. Mijares*, 333 S.W.3d 815, 823 (Tex. App.—Houston [1st Dist.] 2010), no pet.) (rejecting appellant's contention Chapter 74 is an affirmative defense and failure

to plead it results in waiver). Accordingly, we hold Medical Center Ophthalmology and Singer did not act inconsistently and thus, waive their right to move for dismissal; we therefore overrule Dacbert's waiver challenge.[2]

### *Attorney's Fees*

On cross-appeal, Medical Center Ophthalmology and Singer argue the trial court abused its discretion by denying their request for attorney's fees. They contend section 74.351 requires the trial court to award them attorney's fees. Dacbert counters, however, section 74.351 does not apply because her claims are not health care liability claims, and therefore, an award of attorney's fees is not mandatory.

Section 74.351(b) requires the trial court shall enter an order that "dismisses the claim" "with prejudice" and awards "attorney's fees and costs of court incurred by the affected" health care provider if the claimant fails to serve an expert report within the specified period. TEX. CIV. PRAC. & REM. CODE § 74.351(b); *Hernandez v. Ebrom*, 289 S.W.3d 316, 318 (Tex. 2009) ("If timely and sufficient report is not served, the trial court must award the provider its attorney's fees and costs and dismiss the case with prejudice.").

Having determined Dacbert's claims are health care liability claims subject to section 74.351, the trial court was required to award Medical Center Ophthalmology and Singer attorney's fees and costs. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(b); *Hernandez*, 289 S.W.3d at 318.

---

[2] We note Dacbert requests we remand this case to the trial court in the interest of justice in the event we conclude her claims are health care liability claims and the deadline to file her report could not be extended; after consideration, we deny her request. Remand is available only when the trial court commits error and we are reversing the trial court's judgment; here, however, the trial court did not commit error, properly concluded Dacbert's claims are health care liability claims, and dismissed them. *See* TEX. R. APP. P. 43.3(b). Moreover, the trial court did not abuse its discretion when it denied Dacbert's request to extend the statutory deadline; here, the clerk's record shows Dacbert did not request an extension until after the deadline had expired and the Texas Supreme Court's emergency orders concerning Covid-19 had expired. *See Zanchi v. Lane*, 408 S.W.3d 373, 376 (Tex. 2013) (pointing out section § 74.351 requires strict compliance and if claimant does not serve expert report timely or parties do not agree to extension, dismissal is mandatory).

Accordingly, we hold the trial court abused its discretion when it denied their request for attorney's fees, and we remand the cause to the trial court solely for a determination of attorney's fees and costs incurred by Medical Center Ophthalmology and Singer. *See* TEX. R. APP. P. 43.3(b); *Dunn*, 2020 WL 562971, at *8.

## CONCLUSION

Based on the foregoing, we affirm the portion of the trial court's order dismissing Dacbert's claims with prejudice, and we reverse the portion of the trial court's order denying Medical Center Ophthalmology and Singer's attorney's fees and remand the cause to the trial court for consideration of the amount of attorney's fees.

Luz Elena D. Chapa, Justice