# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00298-CV

**Frederick Fung, M.D.; Mindy Minicucci, R.N.; Ana Urukalo, D.P.M.;
The Austin Diagnostic Clinic Association d/b/a Austin Diagnostic Clinic;
The Austin Diagnostic Clinic, P.A.; Austin Diagnostic Clinic, P.A.; et al., Appellants**

**v.**

**Kathryn Fischer and Myron Fischer, Appellees**

---

**FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY
NO. C-1-PB-10-000315, HONORABLE GUY S. HERMAN, JUDGE PRESIDING**

---

## O P I N I O N

Frederick Fung, M.D.; Mindy Minicucci, R.N.; Ana Urukalo, D.P.M.; The Austin

Diagnostic Clinic Association d/b/a Austin Diagnostic Clinic; The Austin Diagnostic Clinic, P.A.;

Austin Diagnostic Clinic, P.A.; The Austin Diagnostic Clinic, P.A. d/b/a Austin Diagnostic Clinic

Ambulatory Surgery Center; and The Austin Diagnostic Clinic Ambulatory Surgery Center bring this

interlocutory appeal of the probate court's orders concerning expert reports that Kathryn Fischer and

Myron Fischer provided in support of their health care liability claims.

Seven orders are challenged in this appeal: three orders overruling Minicucci's,

Urukalo's, and the ADC appellants' objections to appellees' expert reports, three corresponding

orders denying these appellants' motions to dismiss, and one order overruling Fung's objections and

denying his motion to dismiss. For the reasons that follow, as to Minicucci, Urukalo, and the ADC

appellants, we reverse the three orders overruling their respective objections, vacate the three orders

on their respective motions to dismiss, and remand this case for consideration of those motions on the merits; and as to Fung, we reverse the order overruling his objections and denying his motion to dismiss, render judgment for him, and remand this case for determination of his reasonable attorney's fees and costs under the civil practice and remedies code.

## BACKGROUND

In 2007, the Fischers filed suit against Urukalo, a podiatrist, for her alleged negligence in misdiagnosing and improperly treating a cancerous tumor on Kathryn Fischer's foot. The Fischers' original petition also alleged that the Austin Diagnostic Clinic d/b/a Austin Diagnostic Clinic (ADC) was vicariously liable for Urukalo's acts and omissions and independently negligent for its lack of policies and procedures on appropriate testing for certain types of cysts. In an effort to comply with the requirements applicable to "health care liability claims" under chapter 74 of the civil practice and remedies code, the Fischers in 2007 provided expert reports from Brad J. Bachmann, a podiatrist, and Mark E. Johnson, M.D. These reports explicitly addressed only Urukalo's acts or omissions and did not mention any acts or omissions by ADC.[1] Urukalo and ADC did not challenge the adequacy of these two reports, and this appeal does not concern the Fischers' health care liability claim that asserts Urukalo's negligence and shifts liability for her conduct to ADC as pled in the Fischers' original petition in 2007. However, Urukalo and ADC challenged the reports that the Fischers provided in 2009, which are the focus of this appeal.

---

[1] Bachmann's and Johnson's reports disclaim offering opinions about any defendant besides Urukalo by stating: "The following is a fair summary of my opinions as of the date of this report regarding the applicable standards of care and how the manner in which the care *rendered only by Ana Urukalo, D.P.M.* was deficient and failed to meet these applicable standards." (Emphasis added.)

2

Urukalo and ADC remained the only defendants in the case for eighteen months until the Fischers filed a series of five amended petitions between April and July of 2009. Their first amended petition added allegations of gross negligence and malice against Urukalo and an allegation of gross negligence against ADC. Their second amended petition added as defendants a host of other ADC-related entities—"The Austin Diagnostic Clinic, P.A.; Austin Diagnostic Clinic, P.A.; The Austin Diagnostic Imaging Center; and The Austin Diagnostic Clinic Ambulatory Surgery Center"—in addition to the previously named Austin Diagnostic Clinic d/b/a Austin Diagnostic Clinic, alleging twenty-two categories of negligence and gross negligence against the ADC defendants collectively concerning hiring, training, and supervision of "employees, agents, servants, and vice-principals"; authorization/ratification of the employees', agents', servants', and vice-principals' negligence; and overall operation of the clinic. The Fischers' third amended petition added as defendants: (1) "The Austin Diagnostic Clinic, P.A. d/b/a Austin Diagnostic Clinic Ambulatory Surgery Center," in addition to the previously named ADC parties, now adding an allegation of malice, and (2) Frederick Fung, M.D., alleging negligence, gross negligence, and malice as a treating physician and as a member of ADC's board of directors. The Fischers' fourth amended petition named as defendants: (1) Sara LeViseur and (2) Mindy Minicucci, R.N., alleging the negligence of each as an "employee, agent, or servant of ADC's Ambulatory Surgery Center"; and (3) David Joseph, M.D., alleging negligence, gross negligence, and malice as chairman of ADC's board of directors and of the governing body of ADC's Ambulatory Surgery Center. The same petition also included allegations that: (1) Fung was negligent as a member of the governing body of ADC's Ambulatory "Surgical" Center; (2) Urukalo was negligent as a shareholder of ADC and committed the offenses of aggravated assault, battery, securing execution of a document by

3

deception, fraudulently concealing a writing, and injury to an elderly individual; and (3) ADC was vicariously liable for the negligence, malice, gross negligence, assault, and battery committed by its employees, agents, servants, and vice principals and ADC was not a health care provider that practiced medicine; or alternatively, ADC was a health care institution and was directly responsible for the negligence, gross negligence, and breach of fiduciary duties of its "board of directors, medical executive committees, governing body, officers, and directors."

In September 2009, almost two years after filing their original petition, the Fischers filed their fifth amended petition. The Fischers' fifth amended petition: (1) nonsuited by omission The Austin Diagnostic Imaging Center, LeViseur, and Joseph; (2) added allegations that Urukalo committed the offenses of tampering with a government record, tampering with physical evidence, and fraudulent destruction, removal, or concealment of a writing; (3) added allegations that ADC was directly liable for ratifying Urukalo's negligence, gross negligence, malice, and fraud; (4) added allegations that ADC was vicariously liable for "Urukalo's aggravated assault, battery, forgery, and any other conduct defined by the Texas Penal Code"; and (5) added allegations that ADC was vicariously liable for its employees' conspiracy to commit fraud, negligence, gross negligence, and malice. Along with this petition, the Fischers provided a supplemental expert report from Johnson and a new expert report from Joseph Varon, M.D.

The Fischers' new expert reports from Johnson and Varon triggered objections and motions to dismiss from Minicucci, Urukalo, the ADC entities collectively, and Fung. While these objections and motions to dismiss were pending, the Fischers obtained an order transferring their suit from district court to probate court. *See* Tex. Rev. Civ. Stat. Ann. § 608 (West Supp. 2011) (allowing transfer to probate court of district court action that is related to guardianship proceeding

4

pending in probate court).[2] The probate court held a hearing, took the matters under advisement, and eventually signed orders overruling all of the appellants' objections—concluding specifically in three of the orders that Minicucci's, Urukalo's, and ADC's objections to the reports were untimely—and denying all of the appellants' motions to dismiss. The court's seven orders concerning Johnson's supplemental report and Varon's report are the subject of this appeal.

The appellants' issues have some overlap but are not identical. All appellants argue that the Fischers did not serve a timely report addressing the "health care liability claim or claims" pled against them in 2009. All appellants argue that they filed timely objections to the reports and thus did not waive their corresponding rights to seek dismissal. Fung contends that the reports from the Fischers' experts neither implicated him nor complied with chapter 74's requirements. Our analysis of these issues begins with an overview of the statutory framework governing health care liability claims set forth in chapter 74.

## APPLICABLE LAW

**Chapter 74 framework**

Health care liability claims in Texas are governed by the Texas Medical Liability Act in chapter 74 of the civil practice and remedies code. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 74.001-.507 (West 2011 & West Supp. 2011). The code defines a "health care liability claim" as

---

[2] The motion to transfer the suit to probate court is not in the record, but Urukalo's brief explains that "Myron Fischer instituted guardianship proceedings for the person and estate of Kathryn Fischer on December 3, 2009, due to her 'partial incapacity' based on a 'physical limitation.'"

a cause of action against a physician or health care provider for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

*Id*. § 74.001(a)(13). A primary feature of chapter 74's framework is a series of requirements that health care liability claimants support their claims, early in a case, with expert testimony and reports summarizing the expert opinions. A health care liability claimant must serve each party or the party's attorney with an expert's report and the expert's curriculum vitae within 120 days of filing the original petition asserting a health care liability claim against that defendant. *Carroll v. Humsi*, 342 S.W.3d 693, 696-97 (Tex. App.—Austin 2011, no pet.); *Hayes v. Carroll*, 314 S.W.3d 494, 501 (Tex. App.—Austin 2010, no pet.); *see* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (stating statutory requirements).

An "expert report" is a written report by an expert that provides a fair summary of the expert's opinions as of the report's date regarding: (1) applicable standards of care; (2) the manner in which the physician or health care provider's care failed to meet the standards; and (3) the causal relationship between that failure and the injury, harm, or damages claimed. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6). The report is intended to inform the defendant of the specific conduct that the claimant has called into question and provide a basis for the trial court to conclude that the claims have merit. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (citing *American Transitional Care Ctrs. of Tex. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001)).

A defendant may file a motion to dismiss if the expert report is not timely served. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b). If a defendant is not served with an expert report

within the 120-day period, the trial court must enter an order on the motion of the physician or health care provider that dismisses the claim with prejudice and awards fees and costs to the physician or health care provider. *Id.*; *see Lewis v. Funderburk*, 253 S.W.3d 204, 207 (Tex. 2008). Reports that are timely served but substantively deficient may be eligible for a thirty-day extension to cure the deficiencies when the report: (1) contains the opinion of an individual with expertise that the claim has merit and (2) implicates the defendant's conduct. *See Scoresby v. Santillan*, 346 S.W.3d 546, 556 (Tex. 2011) (citing *Ogletree v. Matthews*, 262 S.W.3d 316, 317, 321 (Tex. 2007) (noting that report that did not mention doctor's name but was directed solely to one doctor's care "implicated [that doctor's] conduct")); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6) (defining expert report).

A defendant whose conduct is implicated in a report may file objections to the report's sufficiency. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). Objections must be filed and served within twenty-one days after the date that the defendant is served with the report implicating that defendant's conduct, otherwise the objections to the report's sufficiency are waived. *Id*. The deadline for filing objections to a report's sufficiency is not triggered until: (1) the physician or health care provider becomes a "party"—meaning that the claimant obtains service of process, waiver of service, or an appearance from the physician or health care provider named in the petition—and (2) the claimant serves the expert report on that party or that party's attorney. *See Humsi*, 342 S.W.3d at 698-99; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (stating statutory requirements); *Key v. Muse*, 352 S.W.3d 857, 863-64 (Tex. App.—Dallas 2011, no pet.); *Dingler v. Tucker*, 301 S.W.3d 761, 767 (Tex. App.—Fort Worth 2009, pet. denied); *Yilmaz v. McGregor*, 265 S.W.3d 631, 638 (Tex. App.—Houston [1st Dist.] 2008, pet. denied).

7

By contrast, there is no deadline in chapter 74 for a defendant to object to an expert report as untimely, or even a requirement that a defendant object at all as a predicate for seeking dismissal when the claimant has failed to serve a report within 120 days. *Poland v. Grigore*, 249 S.W.3d 607, 616 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *see Victoria Gardens of Frisco v. Walrath*, 257 S.W.3d 284, 290 (Tex. App.—Dallas 2008, pet. denied) (holding that twenty-one-day deadline applies only to objections about timely served report's "sufficiency," not to objections about report's untimeliness); *see also Methodist Charlton Med. Ctr. v. Steele*, 274 S.W.3d 47, 51 (Tex. App.—Dallas 2008, pet. denied) (holding that complaint in motion to dismiss about failure to timely serve reports was not subject to twenty-one-day deadline for objections to report's sufficiency). This means that there is no duty to object to an expert report that was never served, that was served untimely, or that was so deficient as to constitute no report at all within the 120-day period. *See Funderburk*, 253 S.W.3d at 207 (explaining that "an expert report has not been served" when "an inadequate report *has* been served"); *Bogar v. Esparza*, 257 S.W.3d 354, 361 (Tex. App.—Austin 2007, no pet.) (noting that complaints about absent report, timely but deficient report, or timely report that fails to implicate defendant's conduct and is effectively "no report" are same for purpose of interlocutory review).

**Standard of review**

We review a trial court's rulings on motions to dismiss health care liability claims for an abuse of discretion. *Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006); *Palacios*, 46 S.W.3d at 877. A trial court abuses its discretion by rendering an arbitrary and unreasonable decision lacking support in the facts or circumstances of the case or by acting in an arbitrary or unreasonable

8

manner without reference to guiding rules or principles. *Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011) (plurality op.). The trial court is limited to the information contained in the four corners of the report in reaching its ruling on a motion to dismiss. *Palacios*, 46 S.W.3d at 878. Further, a trial court cannot grant a motion to dismiss that is based on untimely objections to the sufficiency of a report because a defendant's untimely objections are waived. *See Ogletree*, 262 S.W.3d at 322 (affirming denial of motion to dismiss because hospital failed to raise timely objections to reports' sufficiency and waived such objections); *Bakhtari v. Estate of Dumas*, 317 S.W.3d 486, 493 (Tex. App.—Dallas 2010, no pet.) (noting that trial court could not grant motion to dismiss based on untimely objections); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a).

**Jurisdiction**

As a preliminary matter, we address and reject the Fischers' impromptu assertion made at oral argument that, for various reasons, this Court lacks jurisdiction to consider this interlocutory appeal.[3] The Fischers first argue that there is no statutory authorization for this interlocutory appeal. However, the plain language of the statute authorizing interlocutory appeals permits a defendant to appeal from an order that "denies all or part of the relief sought by a motion under Section 74.351(b)," the section that addresses motions to dismiss a claim for a plaintiff's failure to serve a timely expert report.[4] Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9)

---

[3] This Court allowed post-submission briefing on the Fischers' jurisdictional issue. Matters in the Fischers' post-submission brief unrelated to the jurisdictional issue will be considered based upon their earlier briefing and argument.

[4] The exception in section 51.014(a)(9) prohibiting appeal from an order granting a 30-day extension to cure a deficient report under section 74.351 is inapplicable here because the court's orders did not grant any extension. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 51.014(a)(9) (West Supp. 2011), 74.351(c) (West 2011).

(West Supp. 2011). The orders appealed here denied the relief—dismissal and fees—sought in appellants' motions to dismiss, which were based upon the Fischers' failure to serve timely and adequate expert reports. *See id.* § 74.351(b); *Funderburk*, 253 S.W.3d at 207 (concluding that doctor's motion seeking dismissal and fees for report that was considered "not served" because of its inadequacy was section 74.351(b) motion and was immediately appealable); *Bogar*, 257 S.W.3d at 361 (noting *Funderburk*'s clarification that availability of interlocutory appeal is not dependent on whether motion's grounds relate to absent report, timely but deficient report, or timely report that fails to implicate defendant's conduct and is effectively "no report"); *cf. Academy of Oriental Med., L.L.C. v. Andra*, 173 S.W.3d 184, 186, 189 (Tex. App.—Austin 2005, no pet.) (concluding that defendants' motion was not brought under section 74.351(b) because it was filed before expiration of claimant's 120-day period for serving expert reports and sought only to strike expert report). Thus, this Court has jurisdiction over this interlocutory appeal pursuant to section 51.014(a)(9) of the civil practice and remedies code.

The Fischers next argue that this Court lacks jurisdiction because there is no actual controversy between the parties, alleging that "[a]ppellants admit that sufficient reports were timely filed and served as to Mrs. Fischer's health care liability claim in this case." The record disproves this argument. As noted previously, all appellants argue that the Fischers failed to serve timely expert reports; Minicucci, Urukalo, and ADC further argue that the trial court erred in overruling their objections to the reports as untimely; and Fung contends that deficiencies in the reports rendered them the equivalent of "no report" as to him. As such, the Fischers' argument that we lack jurisdiction because there is no actual controversy between the parties lacks merit.

The Fischers also argue—based on governmental-immunity cases—that this Court lacks jurisdiction because appellants waived the protection of section 74.351 by failing to plead that specific section of the statute. The Fischers' cited cases are inapposite. *See City of Dallas v. Moreau*, 718 S.W.2d 776, 778 (Tex. App.—Corpus Christi 1986, writ ref'd n.r.e.) (noting that City raised defense of governmental immunity from suit in its pretrial and post-verdict motions); *City of Brownsville v. Pena*, 716 S.W.2d 680-81 (Tex. App.—Corpus Christi 1986, no writ) (concluding that City never pled its governmental immunity from liability). Similar to the claimant in *Sedeno v. Mijares*, 333 S.W.3d 815, 823 (Tex. App.—Houston [1st Dist.] 2010, no pet.), the Fischers cite no authority supporting their argument that the dismissal provision in chapter 74 is an affirmative defense that must be pled. *See id.* Like the court in *Sedeno*, we have found no authority suggesting that a defendant is "required to file any additional pleadings to invoke its right to file a motion to dismiss pursuant to section 74.351." *Id.* Further, the record reflects that appellants' answers pled the protection of chapter 74 and that the Fischers acknowledged appellants as health care providers.[5] Accordingly, the Fischers' argument that we lack jurisdiction because appellants waived the protection of chapter 74 is unpersuasive. Having determined that there is no jurisdictional bar to this appeal, we now consider appellants' issues.

---

[5] Health care providers and podiatrists are within the scope of chapter 74. *See id.* All of the Fischers' petitions and all of Urukalo's answers identified Urukalo as a "D.P.M." (doctor of podiatric medicine). *See* 22 Tex. Admin. Code § 373.3 (2011) (Tex. State Bd. of Podiatric Med. Exam'rs, Practitioner Identification). Also, the Fischers' response to the motions to dismiss and objections refers to Urukalo as a "podiatrist" and to appellants collectively as "defendant health care providers."

## ANALYSIS

**Nurse Minicucci's objections and motion to dismiss**

Minicucci, a nurse who provided preoperative and recovery care to Kathryn Fischer and witnessed her signature on the surgical consent form, was named in the Fischers' fourth amended petition but was not served with it. After counsel for Urukalo and ADC received Johnson's supplemental report and Varon's report, Minicucci decided to file her objections despite not having been served with the reports. Minicucci's objections began with the assertion that the Fischers had not served her with process and explained that she filed the objections to the sufficiency of the reports out of an abundance of caution. Minicucci's motion to dismiss reiterated her objections to the sufficiency of the reports and pointed out that she was not served with the Fischers' expert reports within the statutory 120-day period.

The probate court overruled Minicucci's objections, "find[ing] that the objections were untimely under Texas Civil Practice & Remedies Code § 74.351(a)." The same day, the court signed an order denying her motion to dismiss.

In her first issue, Minicucci contends that because she was not served with the expert reports as required by chapter 74, her twenty-one-day deadline was not triggered and her objections to the sufficiency and lack of service of the expert reports could not have been untimely. Minicucci also contends that the probate court's erroneous ruling that all of her objections were untimely under section 74.351(a) necessarily resulted in the denial of her motion to dismiss addressing the merits of those objections. *See Rosemond v. Al-Lahiq*, 331 S.W.3d 764, 767 (Tex. 2011) ("The issue of timeliness is a threshold issue in the expert report framework the Legislature enacted."). We note that when ruling on Minicucci's motion to dismiss, the

12

probate court could not have considered objections that were untimely because untimely objections would have been waived. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a).

In response to this issue, the Fischers concede that "Minicucci's objections were timely," and we agree and hold accordingly. *See Humsi*, 342 S.W.3d at 702-03 (concluding that report provided to attorney for named defendant who had not been made "a party" to lawsuit was not served on "a party or the party's attorney" within meaning of chapter 74); *Dingler*, 301 S.W.3d at 767 (concluding that service of report on counsel who ultimately came to represent doctor failed to comply with chapter 74 because doctor was nonparty when report was served); *University of Tex. Health Sci. Ctr. at Houston v. Gutierrez*, 237 S.W.3d 869, 872-73 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (concluding that nonparty health science center's receipt of courtesy copy of expert report from someone other than claimants did not establish service of report complying with chapter 74). But they contend, without citation to the record, that "her motion to dismiss was not denied on that basis" so the error "is of no consequence." We disagree.

The order overruling Minicucci's objections specifies that the probate court found the objections untimely. Although we hold here that the objections were timely, and thus should have been considered by the probate court when ruling on Minicucci's corresponding motion to dismiss, it would have been improper for the court to consider the merits of the objections after ruling that they were untimely. *See Ogletree*, 262 S.W.3d at 322 (holding that because hospital failed to object within statutory twenty-one day period, it waived its objections, and trial court correctly denied hospital's motion to dismiss); *Bakhtari*, 317 S.W.3d at 493 (concluding that trial court could not grant motion to dismiss based on objections that were untimely); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). Thus, although the order denying Minicucci's

13

motion to dismiss states that the court reviewed the pleadings, responses, and arguments of counsel, we must assume that the probate court did not consider the substance of Minicucci's objections, which it found untimely.

Having determined that Minicucci's objections were timely under section 74.351(a) of the civil practice and remedies code, we conclude that the probate court abused its discretion in finding to the contrary and that this error caused the objections not to be considered in Minicucci's corresponding motion to dismiss. As such, we sustain Minicucci's first issue, reverse the probate court's order overruling Minicucci's objections as untimely, vacate the order denying her motion to dismiss, and remand this case so that the court may consider the merits of Minicucci's objections and her motion to dismiss.

**Podiatrist Urukalo's objections and motion to dismiss**

Urukalo is the podiatrist who treated the mass on Kathryn Fischer's foot. Like Nurse Minicucci, Urukalo contends that the trial court abused its discretion by overruling her objections to the 2009 expert reports as untimely and that this error necessarily resulted in the denial of her motion to dismiss.

Urukalo objected to the 2009 reports from Varon and Johnson as substantively deficient and also untimely because they were served more than 120 days after the November 2, 2007 filing of the Fischers' petition asserting a "health care liability claim" against her. *See Humsi*, 342 S.W.3d at 696-97; *Hayes*, 314 S.W.3d at 501; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). Urukalo filed a corresponding motion to dismiss directed to the Fischers' allegations of gross negligence, malice, fraud, aggravated assault, battery, forgery, securing execution of a

14

document by deception, and fraudulent destruction, removal, or concealment of a writing, all of which were pled for the first time in 2009. Similar to Minicucci's motion, Urukalo's motion to dismiss was based on her previously filed objections, which if untimely, were waived and would not have been considered toward her motion to dismiss.

The Fishers served Varon's and Johnson's reports on September 25, 2009, and September 29, 2009, respectively. Urukalo filed and served her objections to Varon's report and to Johnson's supplemental report on October 16, 2009. The Fischers' response filed with the probate court acknowleged that Urukalo filed timely objections to the 2009 reports from Varon and Johnson.[6] We agree that Urukalo's October 16 objections were timely because they were filed and served "not later than the 21st day after the date [she] was served" with the September 25 and September 29 reports. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a).

Nevertheless, the order overruling Urukalo's objections specifies that the probate court found the objections untimely. Although we hold here that the objections were timely, and thus should have been considered by the probate court when ruling on Urukalo's corresponding motion to dismiss, it would have been improper for the court to consider the merits of the objections after ruling that they were untimely. *See Ogletree*, 262 S.W.3d at 322 (holding that because hospital

---

[6] The Fischers assert, for the first time on appeal and contrary to their response below, that Urukalo's objections were waived. Because the Fischers' response did not raise the waiver issue (instead, they acknowledged that Urukalo's objections to the 2009 reports were timely), it was not before the probate court when it ruled, and we may not consider it on appeal. *See Hansen v. Starr*, 123 S.W.3d 13, 18 (Tex. App.—Dallas 2003, pet. denied) (rejecting waiver issue because claimants failed to raise it in their responses to doctors' motions to dismiss); *see also San Jacinto Methodist Hosp. v. Carr*, No. 01-07-00655, 2008 Tex. App. LEXIS 3850, at *8 (Tex. App.—Houston [1st Dist.] May 22, 2008, no pet.) (mem. op.) (holding that hospital could object to expert reports on appeal because claimants failed to raise waiver issue in response to hospital's motion to dismiss).

failed to object within statutory twenty-one day period, it waived its objections, and trial court correctly denied hospital's motion to dismiss); *Bakhtari*, 317 S.W.3d at 493 (concluding that trial court could not grant motion to dismiss based on objections that were untimely); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). Thus, although the order denying Urukalo's motion to dismiss states that the court reviewed the pleadings, responses, and arguments of counsel, we must assume that it did not consider the substance of Urukalo's objections, which it found untimely.

Having determined that Urukalo's objections were timely under section 74.351(a) of the civil practice and remedies code, we conclude that the probate court abused its discretion in finding to the contrary, and that this error caused the objections not to be considered in Urukalo's corresponding motion to dismiss. As such, we sustain Urukalo's first issue, reverse the probate court's order overruling Urukalo's objections as untimely, vacate the order denying her motion to dismiss, and remand this case so that the court may consider the merits of Urukalo's objections and her motion to dismiss.

**ADC's objections and motion to dismiss**

According to the Fischers' pleadings, the various ADC entities and their "employees, agents, and servants" provided treatment to Kathryn Fischer. ADC filed objections and a corresponding motion to dismiss collectively on behalf of all the ADC entities named in the Fischers' suit. The probate court's orders overruling these objections as untimely and denying the motion to dismiss do not distinguish between the original ADC defendant and the four ADC entities added as defendants in 2009. We will calculate statutory deadlines for objections applicable to the original ADC defendant and the four ADC entities based on the timing of their addition as

16

defendants to the Fischers' lawsuit; however, given that the ADC appellants were treated collectively in the orders that are the subject of this appeal, we reserve for the probate court, and express no opinion on, the propriety of the Fischers' addition of these four ADC entities as defendants or the merits of whether those additional entities should be treated distinctly from the original ADC defendant.

### 1. Original ADC defendant's objections to lack of report and late reports

The ADC appellants' first issue, phrased somewhat differently than Minicucci's and Urukalo's issues, similarly contends that the original ADC defendant's objections to the 2009 expert reports were timely and that the original ADC defendant's lack of objection to the 2007 reports did not waive its right to seek dismissal as to the Fischers' health care liability claim asserting the original ADC defendant's direct liability, which was not mentioned by any expert report within the 120-day deadline. The ADC appellants argue that because the 2007 reports did not address the Fischers' direct-liability claim against the original ADC defendant alleging a lack of adequate policies and procedures, the cause of action based on those facts in the Fischers' 2007 original petition was not supported by a timely report and as such, the original ADC defendant had no duty to object.[7] The Fischers contend that because the original ADC defendant did not object to the 2007 reports, it waived all of its objections, including its objections to the 2009 reports and its corresponding right to seek dismissal. Apparently persuaded by this argument, the probate court

---

[7] As previously noted, the 2007 reports address only Urukalo's negligence, and the original ADC defendant does not seek dismissal of the health care liability claim asserting its vicarious liability for Urukalo's alleged negligent conduct as pled in the 2007 original petition.

overruled ADC's collective objections to the 2009 reports, specifically "find[ing] that the objections were untimely under Texas Civil Practice & Remedies Code § 74.351(a)."[8]

A health care liability claimant must serve each party or the party's attorney with an expert report within 120 days of filing the petition asserting a health care liability claim against that defendant. *Humsi*, 342 S.W.3d at 696-97; *Hayes*, 314 S.W.3d at 501; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). Reports are required for a "health care liability claim," which chapter 74 defines, in relevant part, as a cause of action for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care, or safety or professional or administrative services directly related to health care, proximately resulting in a claimant's injury. *Id*. § 74.001(a)(13). A "cause of action" is defined as "a fact or facts entitling one to institute and maintain an action, which must be alleged and proved in order to obtain relief" and as a "group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in court from another person." *In re Jorden*, 249 S.W.3d 416, 421 (Tex. 2008) (orig. proceeding). Consequently, the Legislature's use of "cause of action" signals that we are to look at the operative facts to define a particular cause of action, rather than the particular legal theories put forth based on those facts. *Cardwell v. McDonald*, 356 S.W.3d 646, 654 (Tex. App.—Austin 2011, no pet.).

---

[8] Because the probate court's order explicitly stated that the ADC defendants' objections were overruled as untimely (and thus, were waived), we do not reach the Fischers' additional argument that the original ADC defendant waived its objections to the 2007 reports by participating in discovery. *Cf. Jernigan v. Langley*, 111 S.W.3d 153, 157 (Tex. 2003) (rejecting argument that doctor's "attempt[] to learn more about the case" through discovery demonstrated his intent to waive his right to move for dismissal).

Here, the facts required to establish the defendant's vicarious liability, i.e., the acts of Urukalo and Urukalo's relationship to ADC, differ from the facts required to establish the original ADC defendant's direct liability, i.e., ADC's provision of particular policies and procedures. Under the doctrine of respondeat superior, an employer or principal may be vicariously liable for the tortious acts of an employee or agent acting within the scope of the employment or agency, even though the principal or employer has not personally committed a wrong. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 541-42 (Tex. 2002) (citing *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998)). If a party's alleged health care liability is purely vicarious, a report that adequately implicates the actions of that party's agents or employees is sufficient. *Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 671-72 (Tex. 2008).

In *Gardner*, the Texas Supreme Court stated its qualified agreement with the claimants' contention that a report as to a doctor who performed a lumbar epidural procedure on a claimant could also suffice to support the alleged liability of the owner and operator of the facility where the claimant's procedure was performed because the facility owner's liability was purely vicarious. *Id*. ("To the extent that the Gardners allege that SADI is liable only vicariously for Dr. Keszler's actions, the expert requirement is fulfilled as to SADI if the report is adequate as to Dr. Keszler."); *see University of Tex. Sw. Med. Ctr. v. Dale*, 188 S.W.3d 877, 879 (Tex. App.—Dallas 2006, no pet.). The converse implication of *Gardner* is that if a party's alleged health care liability is not "purely vicarious" but direct, then a report that implicates only the actions of that party's agents or employees is insufficient to that extent. *Cf. Gardner*, 274 S.W.3d at 671-72.

In *University of Texas Southwest Medical Center v. Dale*—a decision the supreme court cited in *Gardner*—the court contrasted the expert testimony required when the

defendant's alleged health care liability is merely vicarious with the testimony required to support an allegation of health care liability based on the defendant's direct negligence. 188 S.W.3d at 879. The *Dale* claimants did not assert that UT Southwestern was itself negligent but rather, its liability was predicated entirely on its resident physicians' actions. *Id*. UT Southwestern argued that it was not served with a report because it was not named in any report. *Id*. at 878. After observing that the expert report functions to (1) inform the defendant of the specific conduct the plaintiff has called into question, and (2) provide the trial court with a basis from which to conclude the claims have merit, the court reasoned that "what is relevant for purposes of the expert report is that it specifically identify the person whose conduct the plaintiff is calling into question and show how that person's conduct constituted negligence." *Id*. at 878-79. The court specified that because the Dales "were not alleging that UT Southwestern was directly negligent," the expert report was not required to mention UT Southwestern by name and would not have explained how UT Southwestern "breached the standard of care and how that breach caused or contributed to the cause of injury." *Id*. at 879.

Here, unlike *Gardner* and *Dale*, the alleged health care liability of the original ADC defendant was not "purely vicarious." The Fischers' original petition alleged not only that liability for Urukalo's acts and omissions should be passed through to ADC—which need not have committed a wrong to have her liability imputed to it—but that ADC itself was negligent based on a separate set of operative facts: its lack of adequate policies and procedures for the appropriate testing of certain types of cysts. The facts that the Fischers alleged to impose direct liability constitute a separate health care liability claim requiring expert support.

The requisite expert testimony on the original ADC defendant's standard of care, the breach of such standard of care, and the causal relationship between any such breach and an injury

20

could not have been fulfilled with testimony in a report addressing only Urukalo's conduct as a podiatrist and wholly failing to identify how the original ADC defendant's conduct amounted to negligence. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6) (defining "expert report"); *Petty v. Churner*, 310 S.W.3d 131, 138 (Tex. App.—Dallas 2010, no pet.) (affirming trial court's dismissal of health care liability claim alleging direct liability that was unaddressed in expert's report); *RGV Healthcare Assocs. v. Estevis*, 294 S.W.3d 264, 270-71 (Tex. App.—Corpus Christi 2009, pet. denied) (holding that trial court abused its discretion by denying defendant's objection to expert report as it related to claimant's allegation of direct liability because report failed to address how defendant's direct conduct, such as implementation of procedures, policies, or rules, deviated from applicable standard of care); *Obstetrical & Gynecological Assocs., P.A. v. McCoy*, 283 S.W.3d 96, 103 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (noting that if plaintiff asserts health care liability claim alleging professional association's direct liability, then plaintiff is required to serve report specifically addressing association's conduct, rather than just conduct of physicians for which it is vicariously liable); *Steele*, 274 S.W.3d 51 (noting that assertion of hospital's vicarious liability for nurse's negligence was distinct from complaints about hospital's negligent hiring, supervision, training, and retention, which concerned hospital's direct negligence and required expert report); *Center for Neurological Disorders, P.A. v. George*, 261 S.W.3d 285, 294 (Tex. App.—Fort Worth 2008, pet. denied) (concluding that expert's report addressing only professional association's vicarious liability was deficient because it made no attempt to address any of claimants' direct-liability allegations); *see also Hendrick Med. Ctr. v. Miller*, No. 11-11-00141-CV, 2012 Tex. App. LEXIS 683, at * 10-14 (Tex. App.—Eastland Jan. 26, 2012, no pet.) (mem. op.) (concluding that health care defendant's direct liability and vicarious liability are separate

21

claims requiring independent evaluation and holding that "procedures and protocols" claim alleging medical center's direct liability should have been dismissed for lack of expert report); *contra Certified EMS, Inc. v. Potts*, 355 S.W.3d 683, 693 (Tex. App.—Houston [1st Dist.] May 19, 2011, pet. filed) (op. on reh'g) (allowing suit against nurse staffing agency to proceed without expert testimony addressing agency's direct liability when claimant had served report addressing agency's vicarious liability arising from same group of operative facts in report). Based on the facts in this record, we conclude that the Fischers pled two health care liability claims—one asserting purely vicarious liability to shift responsibility for Urukalo's conduct to ADC (the vicarious-liability claim) and another asserting that ADC itself was directly negligent because of its alleged failure to put forth adequate policies and procedures (the direct-liability claim)—each requiring supportive expert testimony.[9]

To be timely in this case, a report addressing the Fischers' direct-liability claim against the original ADC defendant should have been served by March 3, 2008—120 days from the filing of the Fischers' original petition containing the cause of action for an alleged lack of

---

[9] The Eleventh Court of Appeals noted that five of our sister courts evaluate direct-liability claims and vicarious-liability claims as separate health care liability claims, but the First Court of Appeals has instead reasoned that the two are merely alternative legal theories for imposing liability in the same health care liability claim and that "if at least one liability theory within a cause of action is shown by the expert report, then the claimant may proceed with the entire cause of action against the defendant, including particular liability theories that were not originally part of the expert report." *Hendrick Med. Ctr. v. Miller*, No. 11-11-00141-CV, 2012 Tex. App. LEXIS 683, at * 9-11 (Tex. App.—Eastland Jan. 26, 2012, no pet.) (mem. op.) (collecting cases and declining to follow *Certified EMS, Inc. v. Potts*, 355 S.W.3d 683, 692 (Tex. App.—Houston [1st Dist.] May 19, 2011, pet. filed) (op. on reh'g)). To the extent *Potts* takes the position that an expert report which solely addresses a vicarious-liability claim against a health care provider suffices to support a direct-liability claim against that provider arising, as here, from a different group of operative facts, we decline to follow it.

22

adequate policies and procedures. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a).[10] The only reports served on the original ADC defendant before March 3, 2008, were the 2007 reports from Bachmann and Johnson, neither of which makes any reference to ADC's direct liability, its alleged lack of adequate policies and procedures, the applicable standard of care for ADC, any breach of that standard, or any causal relationship between an alleged breach and an injury. In fact, both Bachmann's and Johnson's 2007 reports limit their opinions to "the care *rendered only by Ana Urukalo, D.P.M.*" Subsequent reports from Varon and Johnson purporting to address the Fischers' direct-liability claim against the original ADC defendant were not served until September 2009, more than 1½ years after the Fischers' 120-day deadline expired.

The 2007 reports failed to address the Fischers' direct-liability claim. A defendant's duty to object to the sufficiency of an expert report and the corollary twenty-one-day deadline is triggered by the service of a report implicating the defendant's complained-of conduct. *See id.* Here, the Fischers' 2007 petition pled the original ADC defendant's liability for its own negligence due to an alleged lack of adequate policies and procedures, but the Fischers served no report within 120 days supporting that health care liability claim. They had to serve a *report*—not just a petition—supporting their 2007 direct-liability claim.[11] *See Churner*, 310 S.W.3d at 138 (affirming

---

[10] The Fischers filed several amended petitions in 2009, but their amended pleadings against the original ADC defendant, based on the same underlying facts, did not restart their 120-day deadline for serving expert reports. *See Maxwell v. Seifert*, 237 S.W.3d 423, 426 (Tex. App.—Houston [14th Dist.] 2007, pet. denied); *see also Davis v. Baker*, No. 03-10-00324-CV, 2010 Tex. App. LEXIS 10317, at *5-7 (Tex. App.—Austin Dec. 22, 2010, no pet.) (mem. op.).

[11] The Fischers' response to the defendants' objections and motions contains a chart reflecting the Fischers' mistaken belief that the deadline for defendants' objections to the reports ran from the date that the defendants were served with the petition. The Fischers miscalculated the deadline for the defendants' objections—and erroneously argued that the objections were waived—by adding twenty-one days to the date that the defendants were served with the petition

23

trial court's dismissal of health care liability claim alleging direct liability that was unaddressed in expert's report); *see also Hendrick Med. Ctr.*, 2012 Tex. App. LEXIS 683, at \*13-14 (dismissing "direct liability claim regarding procedures and protocols" because no expert report addressed it).

No duty to object to the sufficiency of the reports arose until the Fischers served a report addressing their direct-liability claim against the original ADC defendant. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (requiring objections to report's sufficiency within twenty-one days from each defendant health care provider "whose conduct is implicated in a report"); *McCoy*, 283 S.W.3d at 103 (noting that if plaintiff asserts health care liability claim alleging professional association's direct liability, then plaintiff is required to serve report specifically addressing association's conduct, rather than just conduct of physicians for which it is vicariously liable, and if plaintiff serves no such report, association "could not have waived any complaints about [report's] sufficiency"). Because the original ADC defendant had no duty to object in 2007—when the Fischers served no report supporting their direct-liability claim against the original ADC defendant—the absence of a sufficiency objection in 2007 did not result in any waiver.

Further, the 2009 reports served in support of the Fischers' direct-liability claims against the original ADC defendant were untimely. Because belated service of an expert report is an incurable procedural defect, an objection to a late-served report is not subject to the twenty-one-day deadline. *See Grigore*, 249 S.W.3d at 615-16 (noting that procedure for objections in section 74.351(c) is for those that are not based on belated service "because once a report is late, it remains late: no 'cure' exists to render an untimely report timely"); *see Walrath*, 257 S.W.3d

_____

instead of the date that the defendants were served with the *report*. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (emphasis added).

at 290 (holding that twenty-one-day deadline applies only to objections about report's "sufficiency" or substance, not to objections about report's untimeliness); *see also Steele*, 274 S.W.3d at 51 (holding that complaint about failure to serve timely expert reports raised in motion to dismiss was not subject to twenty-one-day deadline for objections to expert report's sufficiency). Thus, the objection that the 2009 reports purporting to address the Fischers' direct-liability claim against the original ADC defendant were served too late—more than 1½ years after the filing of the 2007 original petition alleging ADC's direct liability—was not subject to the twenty-one-day deadline in section 74.351(a), and raising that objection in 2009 did not result in any waiver.

At the hearing before the probate court, the Fischers acknowledged initially that they did not timely serve the original ADC defendant with the 2009 reports from Varon and Johnson. But they also argued that the 2009 reports were timely for their "current allegations" against the original ADC defendant because they nonsuited the "generically [pled] policies and procedures" claim in their 2007 original petition and replaced it with "specific allegations" in their 2009 fifth amended petition. On appeal, they further argue that as to the original ADC defendant, the 2009 reports were "supplemental."

We reject the notions that the Fischers' nonsuit and repleading restarted their expired deadline for serving an expert report addressing their health care liability claim asserting the original ADC defendant's direct liability and that their "supplemental" report may provide essential information for that health care liability claim that was omitted from the previously served expert reports. *See Richburg v. Wolf*, 48 S.W.3d 375, 378 (Tex. App.—Eastland 2001, pet. denied) (holding, under predecessor statute, that unless trial court grants extension of time, supplemental

25

report cannot supply critical information omitted from original report—such as standard of care, breach, and causation—after statutory period has expired, even if original report was timely filed).

The original ADC defendant faced no deadline for objecting to the lack of a report in 2007 and to the 2009 reports' late service; thus its objections could not have been untimely. The original ADC defendant did have a deadline for objecting to the substance of the 2009 reports, and those objections were timely filed and served. The record reflects that the Fischers served the original ADC defendant with Varon's report on September 25, 2009 and Johnson's supplemental report on September 29, 2009, and ADC collectively filed and served its objections on October 16, 2009, which was "not later than the 21st day after the date [the original ADC defendant] was served" with both of those reports. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a).

### 2. Additional ADC entities' objections to 2009 reports

After the Fischers missed their 120-day deadline for serving a report supporting their direct-liability claim against the original ADC defendant, they filed a series of amended petitions. On May 29, 2009, the Fischers filed a second amended petition that for the first time pled health care liability claims alleging the direct and vicarious liability of four additional ADC entities that they added as defendants. Assuming without deciding that the addition of these four ADC entities was appropriate, the 120-day deadline for serving expert reports addressing health care liability claims against them was September 28, 2009. *See id.*; Tex. R. Civ. P. 4. Varon's report, filed and served on September 25, 2009, was timely as to these four defendants, but Johnson's supplemental report, filed and served on September 29, 2009, was not. On October 16, 2009, within twenty-one days of being served with both of these reports, ADC collectively filed and served its timely objections.

26

Nevertheless, the order overruling the ADC defendants' objections specifies that the probate court found the objections untimely. Although we hold here that the objections were timely, and thus should have been considered by the trial court when ruling on the ADC defendants' corresponding motion to dismiss, it would have been improper for the trial court to consider the merits of the objections after ruling that they were untimely. *See Ogletree*, 262 S.W.3d at 322 (holding that because hospital waived its untimely objections, trial court correctly denied hospital's motion to dismiss); *Bakhtari*, 317 S.W.3d at 493 (concluding that trial court could not grant motion to dismiss based on objections that were untimely); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). Thus, although the order denying the ADC defendants' motion to dismiss states that the court reviewed the pleadings, responses, and arguments of counsel, we must assume that it did not consider the substance of the ADC defendants' objections, which it found untimely.

Having determined that the ADC defendants' objections were timely under section 74.351(a) of the civil practice and remedies code, we conclude that the probate court abused its discretion in finding to the contrary and that this error caused the objections not to be considered in the ADC defendants' corresponding motion to dismiss. As such, we sustain the ADC appellants' first issue, reverse the probate court's order overruling the ADC defendants' objections as untimely, vacate the order denying the ADC defendants' motion to dismiss, and remand this case so that the court may consider the merits of the ADC defendants' objections and motion to dismiss.

**Dr. Fung's objections and motion to dismiss were based on the merits**

Dr. Fung is an internal medicine physician who referred Kathryn Fischer to Urukalo and issued Fischer's presurgical clearance. The probate court signed an order denying Fung's motion

to dismiss and overruling his objections to the 2009 expert reports but did not state that Fung's objections were untimely; thus, Fung is differently situated in that the denial of his motion to dismiss was based on the merits of the arguments presented to the probate court.

The Fischers named Fung for the first time in their June 17, 2009 third amended petition, alleging his negligence, malice, and gross negligence. Fung states, and the Fischers do not deny, that he was added to their suit after they took his deposition and after two years of discovery between the other parties, including electronic medical record documentation and five other physicians' depositions. The Fischers served Fung with Varon's report on September 24, 2009, and with Johnson's supplemental report on September 25, 2009. Fung timely filed his objections to the reports and a motion to dismiss on October 15, 2009. Fung was not a party to the Fischers' suit in 2007 and was not served with or mentioned by the reports from Bachmann and Johnson accompanying the Fischers' original petition. Instead, as previously noted, both of those reports limit their opinions to "the care *rendered only by Ana Urukalo, D.P.M.*"

**Fischers' arguments that Fung's objections were untimely lack merit**

The Fischers argued to the probate court that although Fung was not a party in 2007 and was not served with Bachmann's report and Johnson's initial report, Fung failed to object to the 2007 reports and therefore waived any objection to considering them in conjunction with their 2009 reports.[12] Within his first issue, Fung argues that his objections to the 2009 reports were timely and that, as to him, the 2007 reports are not before the court and cannot be considered in combination with the 2009 reports because the earlier reports do not implicate him and he was not

---

[12] The Fischers appear to have abandoned this argument, which is unaddressed in their brief. *See* Tex. R. App. P. 38.2(a)(2).

28

served with them.  *Cf.* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(i) (allowing expert reports to be considered together in determining whether adequate expert report has been served).

The record reflects that the reports from Bachmann and Johnson were filed and served with the Fischers' original petition on November 2, 2007, long before Fung was a party to the suit.[13] As previously discussed, a deadline for filing objections to the substance of a report is not triggered until the physician or health care provider becomes a "party" and the claimant serves the expert report on that party or that party's attorney.  *See, e.g.*, *Humsi*, 342 S.W.3d at 698-99; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a).  Fung was not a party to the Fischers' suit when they served the reports from Bachmann and Johnson in 2007, and the Fischers never served Fung with those reports; thus, he had no duty to object to them.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b) (authorizing dismissal of claim if after 120-day period "an expert report has not been served"); *Humsi*, 342 S.W.3d at 698 (noting that Legislature would not have imposed deadline for objections to report's sufficiency on nonparty who "would be outside the court's jurisdiction and have no duty to participate in the action").  As such, no "waiver" resulted from then-nonparty Fung's lack of objection in 2007 to the reports with which he was never served, and the 2007 reports should not be considered in combination with the 2009 reports to meet the Fischers' burden as to Fung.

Further, the Fischers served Fung with Varon's report on September 24, 2009, and Johnson's supplemental report on September 25, 2009.  Fung filed his objections to both on October 15, 2009, which was "not later than the 21st day after the date [Fung ] was served" with the

---

[13] The Fischers served only the original pair of defendants, ADC and Urukalo, with the first set of expert reports.

reports.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a).  Given the facts in this record, Fung's objections to the 2009 reports were timely.

**Sufficiency of Johnson's and Varon's 2009 reports as to Fung**

Unlike its rulings as to the other appellants, the probate court reached the substance of Fung's objections and motion to dismiss, which asserted that the Fischers's health care liability claim against him should be dismissed because Varon's and Johnson's 2009 reports failed to comply with the statutory requirements of chapter 74.  *See id.* § 74.351(b); *Funderburk*, 253 S.W.3d at 207-08; *Bogar*, 257 S.W.3d at 360-61.  In his first issue, Fung argues that Johnson's supplemental report does not implicate him and that Varon's report requires the court to make inferences about Fung's negligence that are contrary to Varon's own opinions in the report.  We consider each of these arguments in turn.

### 1.  Johnson's supplemental report

Chapter 74 defines an "expert report" as a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding:  (1) applicable standards of care; (2) the manner in which the care rendered by the physician or health care provider failed to meet the standards; and (3) the causal relationship between that failure and the injury, harm, or damages claimed.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6).  A report that omits one or more of these required elements, or states the expert's opinion as mere conclusions without supporting facts, is insufficient to constitute a "good faith effort" at compliance with chapter 74.  *See Samlowski*, 332 S.W.3d 409-10; *Palacios*, 46 S.W.3d at 879; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(*l*) (requiring court to grant motion challenging adequacy of expert report if report does

30

not represent objective good-faith effort to comply with statutory definition of expert report); *Scoresby*, 346 S.W.3d at 556 (requiring report to address all statutory elements and prohibiting omissions in report from being supplied by inference); *Jernigan*, 195 S.W.3d at 93-94 (affirming trial court's dismissal of suit because expert reports omitted any allegation about how doctor breached standard of care and causation); *Bowie Mem'l Hosp.*, 79 S.W.3d at 53 (concluding that report must contain all required information within its four corners). "[A] document qualifies as an expert report if it contains a statement of opinion by an individual with expertise indicating that the claim asserted by the plaintiff against the defendant has merit." *Scoresby*, 346 S.W.3d at 549.

A defendant may be "implicated" in a report even if the defendant is not specifically named. *See Ogletree*, 262 S.W.3d at 317, 321 (concluding that report directed solely to urologist's care implicated defendant urologist although it did not mention him by name); *Bogar*, 257 S.W.3d at 367; *see* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (setting deadline for defendants "whose conduct is implicated in a report" to file objections). In such cases, the report may be deficient, but it would not be considered the equivalent of "no report." *Scoresby*, 346 S.W.3d at 556; *Bogar*, 257 S.W.3d at 367. On the other hand, a report that omits all of the statutorily required elements is not merely deficient, but rather amounts to no report at all. *Rivenes v. Holden*, 257 S.W.3d 332, 338-39 (Tex. App.—Houston [14th Dist.] 2008, pet. denied); *Garcia v. Marichalar*, 185 S.W.3d 71-72, 74 (Tex. App.—San Antonio 2006, no pet.); *see Ogletree*, 262 S.W.3d at 320 (citing dismissal of claim and ineligibility for extension to cure report in *Marichalar* as example of "seemingly harsh result[]" following from service of report that mentioned other defendant doctors but not defendant Dr. Garcia).

31

Johnson's supplemental report begins by identifying Urukalo as the subject of his opinions:

> The purpose of this supplemental report is to provide a fair summary of my opinions at this time as to the health care provided by Ana Urukalo, DPM to Mrs. Kathryn Fischer in 2006 and 2007.

He proceeds to address only the standard of care owed by "physicians that treat soft tissue masses in the lower extremities[,] including foot surgeons and podiatrists, such as Dr. Urukalo," not the standard of care for a referring primary care physician like Fung. His discussions about the "breaches of standards of care" and "causation" are directed solely at Urukalo's conduct. Further, although Fung's medical records are identified among the materials that Johnson reviewed in the preparation of his report, Johnson expressed no criticism of Fung whatsoever. In fact, the Fischers' response below argued that this report was intended to support their claim against Urukalo.

Because the four corners of Johnson's supplemental report fail to provide any information about Fung's standard of care as a primary care physician, any alleged breach of the standard of care by Fung, and any causal link between an alleged breach by Fung and Kathryn Fischer's injury, the report does not implicate Fung. *See Rivenes*, 257 S.W.3d at 338-39 (holding that trial court abused its discretion by denying doctor's motion to dismiss because expert's report opined only about negligence of another doctor, hospital, and "hospital staff" generally); *Marichalar*, 185 S.W.3d at 71-72, 74 (holding that expert report that focused on acts by other defendants and did not mention Dr. Garcia at all was "no report" as to him and thus, trial court erred in granting claimant extension of time to cure that nonexistent report). We conclude that

Johnson's supplemental report was not merely deficient in failing to comply with chapter 74 but was the equivalent of "no report" as to Fung.

### 2. Varon's report

Fung contends that Varon's report failed to comply with chapter 74's required discussions of breach of the standard of care and causation because its conclusions are not linked to facts in the report and it requires the court to infer Fung's negligence. Fung argues specifically that Varon's report is conditional and speculative because: (1) it relies on an assumption that Fung was aware of Kathryn Fischer's MRI results and failed to act; (2) it fails to make a causal link between an allegedly breached standard of care and an injury by requiring an inference that if Fung had access to Urukalo's chart notes, then Kathryn Fischer's outcome would have been different; and (3) it is not supported by facts within the four corners of the report. The Fischers respond that Varon's report "clearly identif[ies]" how Fung's conduct fell below the standard of care, and that the "primary breach exists if Fung was aware of Mrs. Fischer['s] MRI and did nothing with this differential diagnosis."

The causal connection in medical malpractice suits must be made "beyond the point of conjecture" and "must show more than a possibility" to warrant submission of the issue to a jury. *Lenger v. Physician's Gen. Hosp.*, 455 S.W.2d 703, 706 (Tex. 1970); *see Bowie Mem'l Hosp.*, 79 S.W.3d at 53. Reports providing a "description of only a possibility of causation do[] not constitute a good-faith effort to comply with the statute." *Walgreen Co. v. Hieger*, 243 S.W.3d 183, 186-87 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (holding that expert report stating claimant had symptoms "consistent with" known side effects of medication was insufficient

to demonstrate causal link); *see McMenemy v. Holden*, No. 14-07-00365-CV, 2007 Tex. App. LEXIS 8830, at \*15-16 (Tex. App.—Houston [14th Dist.] Nov. 1, 2007, pet. denied) (mem. op.) (concluding that expert's report expressing uncertainty about possibility of positive outcome for patient failed to make causal link indicating plaintiffs' claim had merit); *Estate of Allen v. Polly Ryon Hosp. Auth.*, No. 01-04-00151-CV, 2005 Tex. App. LEXIS 1691, at \*16-17 (Tex. App.—Houston [1st Dist.] Mar. 3, 2005, no pet.) (mem. op.) (holding that expert's report failed to meet statutory causation requirement by opining merely that breach of standard of care "could have contributed" to decline in claimant's condition).

Further, a court may not fill in gaps in a report by drawing inferences or guessing what the expert meant or intended. *Austin Heart, P.A. v. Webb*, 228 S.W.3d 276, 279 (Tex. App.—Austin 2007, no pet.). Instead, the report must include the required information within its four corners. *Bowie Mem'l Hosp.*, 79 S.W.3d at 53.

Reliable expert opinion should also be free from internal inconsistencies. *See Wilson v. Shanti*, 333 S.W.3d 909, 914 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (citing *General Motors Corp. v. Iracheta*, 161 S.W.3d 462, 470-72 (Tex. 2005)). In *Wilson*, the court affirmed the exclusion of an expert's medical causation testimony because of the inconsistency between the expert's initial report, the claimant's deposition testimony, and the unexplained conclusion in the expert's supplemental report attempting to reconcile the facts in his initial report with the claimant's testimony. *Id.* at 914-15. Because of the unexplained inconsistency underlying the expert's conclusion, the court affirmed the trial court's finding that the expert failed to provide a reliable foundation for his causation opinion. *Id.* at 915.

Varon's report contains significant internal inconsistencies and is ambivalent about Fung's liability. Specifically, although Varon's criticisms of Fung are wholly dependent on whether Fung had access to Kathryn Fischer's MRI and differential diagnosis at a certain point in her treatment, the factual background section of Varon's report conveys his uncertainty about whether Fung ever saw a chart entry with the MRI result and whether Fung knew about the differential diagnosis of cancer.

Varon's report says that Fung's negligence depends on Fung:

(1) having the MRI test available to him by about 1:00 p.m. on April 16, 2007 (when Varon states that Fung completed his examination and report);

(2) knowing of the MRI result by about 1:00 p.m. on April 16, 2007; or

(3) having Dr. Urukalo's April 10th chart information about the MRI and differential diagnosis by about 1:00 p.m. on April 16, 2007; and

(4) knowing that the differential diagnosis included neoplasm, tumor, or sarcoma by about 1:00 p.m. on April 16, 2007.

Varon further opined that the standard of care requires internal medicine physicians like Fung to:

- review information that is "pertinent" and "available" about the patient's current medical and differential diagnoses, history, medications, physical examination, test studies and results, and evaluate planned procedure[s];

- timely refer the patient for appropriate consultations;

- adequately inform the patient of "differential diagnoses known," planned treatment, perceptions and expectations of the surgical procedure; and

- confirm and ensure that the planned procedure is "appropriate for the differential diagnosis," that it is scheduled to be performed by appropriate and qualified personnel, and that it is scheduled to be performed at an appropriate and qualified facility.

35

All of these opinions hinge on the patient information "available" to Fung and the "differential diagnoses known" to him.

Yet Varon's report affirmatively negates Fung's having seen the information that is identified as key to his liability. For instance, when Varon reviews the facts and explains the function of the electronic record system and the timing of the physicians' entries, he states that Fung would not have seen Urukalo's April 10th chart entry because she signed it almost ten hours after Fung signed his report:

> Dr. Fung completed the physical examination of Mrs. Fischer and cleared Mrs. Fischer for surgery for a ganglion cyst and signed his report *at 1:20 pm* on April 16, 2007. . . . However, after Dr. Fung completed his report and signed the history and physical form, later that night *at 11:12pm* on April 16, Dr. Urukalo signed the chart document she supposedly dictated on April 10.
>
> It is my understanding that the electronic record system used at ADC allowed additions and changes to patient chart documents and all other health care providers are unable to view the chart document until after the document is signed. Then only the final document is available, not prior to any additions or changes.

(Emphases added.) In fact, Varon is unable to state that anyone other than Urukalo knew about her April 10th chart entry or the differential diagnosis of neoplasm or sarcoma:

> Dr. Urukalo's April 10, 2007 chart entry had cc: Dr. Fung and Dr. Pytkowski. It is unclear whether Dr. Fung and Dr. Pytkowski received and/or reviewed the April 10, 2007 medical document before the surgery on April 20, 2007; if so, when they received and/or reviewed the medical document and what was on the medical document when received and/or reviewed. . . . Both Dr. Fung and Dr. Pytkowski testified they never saw or received a copy of Dr. Urukalo's April 10, 2007 chart document, were not aware of the MRI, were not aware of the MRI report of Dr. Chen, and not aware o[f] Dr. Urukalo's differential diagnosis of neoplasm or sarcoma before the surgery on Mrs. Fischer on April 20, 2007.
>
> . . . .

36

There are several handwritten records that state a preoperative and postoperative diagnosis of a ganglion cyst that includes a possible neoplasm, but it is unclear when and by whom this information was written in the medical chart.

Further inconsistencies are present in the report's discussion of "**CAUSATION**," which states that between "February 17, 2006 through December 21, 2006, ADC employees, agents, and servants, including Dr. Urukalo, knew or should have known that Mrs. Fischer's soft tissue mass was probably not a ganglion cyst, and required additional diagnostic testing." However, that time frame was after Fung's referral to Urukalo, when Fung was not treating Kathryn Fischer.

Ultimately, in the "**NEGLIGENCE, GROSS NEGLIGENCE, MALICE AND FRAUD OF DR[.] FUNG**," section of his report, Varon qualifies his specific criticism of Fung by stating that Fung:

> *was not negligent unless* prior to completing his examination and finalizing his report on April 16, 2007, the MRI test was available to Dr. Fung, Dr. Fung was aware of Mrs. Fischer's MRI test result, or *if* Dr. Urukalo's April 10, 2007 return visit chart document with information regarding the MRI result and her differential diagnosis was available to him, and *if* he unaware [sic] that Mrs. Fischer's differential diagnosis included a neoplasm, tumor, or sarcoma prior to the surgery on April 20, 2007.
>
> However, *if* prior to completing his examination and finalizing his report on April 16, 2007, the MRI test was available to Dr. Fung, Dr. Fung was aware of Mrs. Fischer's MRI test result, or *if* Dr. Urukalo's April 10, 2007 return visit chart document with information regarding the MRI result and her differential diagnosis was available to him, or *if* he unaware [sic] that Mrs. Fischer's differential diagnosis included a neoplasm, tumor, or sarcoma prior to the surgery on April 20, 2007, *then it is my opinion* based on my education, experience, training, review of the material listed, and in reasonable medical probability, that **FREDERICK FUNG, M.D.'s** negligence, gross negligence, malice, and conspiracy to fraud [sic] *was a proximate cause* of Mrs. Fischer's injuries and damages . . . .

(Emphases added.) This section suggests that the preceding facts Varon identified in his report,

including the chronology supporting Fung's testimony that he had not seen Urukalo's April 10th chart entry, may be disregarded in favor of assumptions that are unsupported by the report's four corners—namely, that the MRI test was available to Fung, that Fung was aware of the MRI test result, that Urukalo's chart document was available to Fung, or that Fung was aware of the differential diagnosis including a neoplasm, tumor, or sarcoma before Kathryn Fischer's surgery—to create a causal link between Fung's conduct and Fischer's injuries.

Still other sections of Varon's report discount these conditional assumptions by reiterating that Fung lacked access to, and knowledge of, Urukalo's April 10th chart note and the possible cancer diagnosis. Most notably, one of Varon's criticisms of Urukalo is that she "intentionally concealed" the very information that Varon speculates Fung's liability would hinge on:

> Dr. Urukalo referred Mrs. Fischer to Dr. Fung for a preoperative examination and history and physical preoperative to an excision of a ganglion cyst. Dr. Urukalo *intentionally concealed the MRI findings* [suggesting cancer] *from Dr. Fung*, who completed his examination and report at approximately 1 pm on April 16, 2007. However, Dr. Urukalo did not sign her chart note until over 10 hours after Dr. Fung completed his examination and signed his reports. Dr. Urukalo knew that her chart note of April 10, 2007, regarding the MRI findings and Mrs. Fischer's "differential diagnosis includes...sarcoma" was *not accessible to Dr. Fung* in Mrs. Fischer's electronic medical chart until after she signed the note at 11:12 pm on April 16, 2007.
>
> . . . .
>
> [I]t is *questionable* as to *when* and *who else was aware* of the preoperative diagnosis of a neoplasm and sarcoma and *when* and *how* this critical information was available to ADC employees involved in the April 20, 2007 surgery, other than Dr. Urukalo.
>
> . . . .
>
> The medical records confirm that prior to the procedure on April 20, 2007, Mrs. Fischer had a differential diagnosis of a malignant sarcoma, but it is *unclear*

*which health care providers other than Dr. Urukalo were aware* of this critical and important information.

(Emphases added.) Varon's report underscores the significance of Fung's lack of access to the MRI findings and preoperative diagnosis by including the "pertinent finding" that Urukalo "conceal[ed] from everyone involved with the surgery that Mrs. Fischer's mass could be a sarcoma."

In summary, the information on which Varon would hinge Fung's negligence is affirmatively negated by Varon's other opinions in this report that:

- Dr. Urukalo intentionally concealed the MRI findings suggesting cancer from Dr. Fung; and

- Dr. Urukalo's chart note of April 10, 2007 with the MRI findings and differential diagnosis including sarcoma was not accessible to Dr. Fung.

Further, as to Varon's allegation that Fung was negligent if he knew about the differential diagnosis of cancer by the time he completed the exam and his report on April 16, 2007, nothing in the four corners of Varon's report opines that Fung knew, by the time he completed the exam and his report, of a differential diagnosis including neoplasm, tumor, or sarcoma.

Varon's opinions here resemble those from discredited reports that failed to show more than a possibility of a causal link between the defendant's conduct and the claimant's injury. *See Bowie Mem'l Hosp.*, 79 S.W.3d at 53; *Hieger*, 243 S.W.3d at 187; *Christus Spohn Health Sys. v. Trammell*, 13-09-00199-CV, 2009 Tex. App. LEXIS 6329, at *7-8 (Tex. App.—Corpus Christi Aug. 13, 2009, no pet.) (mem. op.) (concluding that expert's causation opinion "merely suggest[ing] that *if* an assumption can be made, then 'a causal link can be made'" was "wholly inadequate" and "nothing more than conjecture"); *see also Alfieri v. United States*, No. SA-08-CV-277-XR,

2009 U.S. Dist. LEXIS 108470, at *9-11 & n.4 (W.D. Tex. Nov. 20, 2009) (order) (ruling that

expert's conclusion that "defendant *would be* further negligent *if* in fact" certain conditions were

met was speculative) (emphases added). Because Varon's report acknowledges that Fung would not

have had information that Urukalo "intentionally concealed" from him, and because nothing in this

report indicates Fung's awareness of a differential diagnosis including neoplasm, tumor, or sarcoma

by 1:00 p.m. on April 16, 2007, any opinion by Varon that Fung did have such information turns

wholly on assumption that is unsupported, if not disputed, by the facts in Varon's report.

The San Antonio Court of Appeals addressed a similar problem with assumptions in

one of Varon's previous reports. *See Cooper v. Arizpe*, No. 04-07-00734, 2008 Tex. App. LEXIS

2506, at *9-10 (Tex. App.—San Antonio Apr. 9, 2008, pet. denied) (mem. op.). In an opinion that

issued before the Fischers served Varon's report on Fung, the court concluded that Varon's report

was deficient because of its assumptions that an emergency department chart and a certain doctor's

notes were in a floor chart that was available for the defendant doctors to review:

> [T]he alleged breach of the standard of care . . . w[as] contingent on Dr. Varon's
> assumption that the [emergency department] chart and Dr. Skeete's progress notes
> were in the floor chart. . . . By relying on assumptions instead of facts, the report
> provides no basis for the trial court to conclude that the claims against [the defendant
> doctors] have merit.

*Id*. (citing *Bowie Mem'l Hosp*., 79 S.W.3d at 52; *Murphy v. Mendoza*, 234 S.W.3d 23, 28

(Tex. App.—El Paso 2007, no pet.) (holding that expert's opinion as to breach of the standard of care

was speculative and conclusory as it was unsupported by facts in report's four corners and relied on

assumption); *Hutchinson v. Montemayor*, 144 S.W.3d 614, 618 (Tex. App.—San Antonio 2004,

no pet.) (concluding that report failed to show more than possibility and speculation as to causation)).

We likewise conclude here that Varon's opinions regarding Fung's negligence, breach of the standard of care, and causation—which depend on unsupported assumptions as to what Fung knew and when he knew it—are conditional and speculative at best, and are affirmatively contradicted and negated by Varon's own opinions at worst. As such, they did not provide a basis for the court to conclude that the Fischers' health care liability claim against Fung has merit. *Cf. Bowie Mem'l Hosp.*, 79 S.W.3d at 52.

Under the facts and circumstances of this case, neither Varon's report nor Johnson's supplemental report constituted a "good faith effort" at compliance with chapter 74. We therefore sustain Fung's first issue. We must now determine whether this case should be remanded for the probate court to consider granting the statutory thirty-day extension of time to cure the deficiencies in these reports. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c).

**Eligibility for extension of time to cure**

In his second issue, Fung argues that, despite two years of discovery and numerous depositions, the deficiencies in the expert reports that the Fischers served in support of their health care liability claim against him were incurable—Johnson's report fails to implicate Fung whatsoever, and Varon's report lacks a factual basis within its four corners, to the extent that it expresses any opinions regarding Fung. Because neither could be cured without an entirely new report, Fung contends that they are ineligible for the statutory thirty-day extension of time to cure their deficiencies. The Fischers argue that remand is appropriate because the reports that they served are

41

not the equivalent of "no report," and if Varon's report lacks a link between his stated conclusions and Fung's conduct, addressing that deficiency would be "an easy fix."

Service of a report that is deficient, but not so deficient as to constitute "no report," need not result in dismissal of the underlying health care liability claim. *See Samlowski*, 332 S.W.3d at 411; *Austin Heart*, 228 S.W.3d at 284-85 & n.8. Trial courts are afforded discretion under chapter 74 to grant one thirty-day extension so that claimants may, if possible, cure deficient reports. *Samlowski*, 332 S.W.3d at 411 (citing Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c); *Ogletree*, 262 S.W.3d at 320). When we find deficient a report that the trial court considered adequate, we may remand the case for the trial court's consideration of whether to grant the thirty-day extension. *Leland v. Brandal*, 257 S.W.3d 204, 207 (Tex. 2008); *see Austin Heart*, 228 S.W.3d at 284-85 & n.8.

Recently, a majority of the Texas Supreme Court expressed a preference for trial courts to err on the side of granting extensions to cure deficient reports, noting that "[t]he right answer in many cases will be for the trial court to grant one thirty-day extension upon timely request and be done with it." *Samlowski*, 332 S.W.3d at 411-12. The court concluded that a deficient report is eligible for the thirty-day extension if it: (1) is served by the statutory deadline; (2) contains the opinion of an individual with expertise that the claim has merit; and (3) implicates the defendant's conduct. *Scoresby*, 346 S.W.3d at 557. The court acknowledged that "this is a minimal standard, but we think it is necessary if multiple interlocutory appeals are to be avoided, and appropriate to give a claimant the opportunity provided by the Act's thirty-day extension to show that a claim has merit." *Id.*

An inadequate report does not indicate a frivolous claim if the report's deficiencies are readily curable. *Id*. at 556; *see id.* at 558-59 (Willett, J., concurring) (concluding that report

42

"must actually allege that someone committed malpractice," and report that "*never asserts that anyone did anything wrong*" cannot receive extension because bar for report is low "but not subterranean"); *see Samlowski*, 332 S.W.3d at 416 (Guzman, J., concurring) (reasoning that report from qualified health care professional, which explained belief that physician's actions caused claimant's injuries, should have been eligible for extension to cure because it did not demonstrate on its face that it was incurable). Thus, courts should grant the statutory extension of time when a deficient expert report can be cured readily and deny the extension when it cannot. *Samlowski*, 332 S.W.3d at 411. The court in *Scoresby* determined that the expert's report was deficient in at least one respect because it omitted the standard of care and contained only an implication that the standard was inconsistent with the surgeons' conduct. *Scoresby*, 346 S.W.3d at 557. However, the court concluded that the expert's report was eligible for the statutory extension of time to cure its deficiency because the expert claimed expertise as a neurologist, described plaintiff's brain injury, attributed the effects of such injury to the defendant surgeons' breach of the standards of care, and opined unequivocally that the plaintiff's claim had merit. *Id*. ("[T]here [wa]s no question that in [the expert's] opinion, Santillan's claim against the Physicians has merit.").

The report at issue in *Scoresby*, which had readily curable deficiencies and unquestionably opined that the claim against the physicians had merit, is unlike Johnson's and Varon's reports as to Fung. Applying the *Scoresby* three-factor test to Johnson's supplemental report shows that only the first factor is met: the report was timely served on Fung. However, the report does not opine that the Fischers' health care liability claim against Fung has merit and the report does not implicate Fung. *Cf. id.* It omits any discussion about the standard of care for a referring primary care physician like Fung, its only references to "breaches of standards of care" and

43

"causation" are directed solely at Urukalo's conduct, and it simply fails to assert that Fung did anything wrong. *See Rivenes*, 257 S.W.3d at 338-39 (reversing trial court's denial of doctor's motion to dismiss because expert's report opined only about negligence of another doctor, hospital, and "hospital staff" generally); *Marichalar*, 185 S.W.3d at 71-72, 74 (concluding that expert report was ineligible for extension of time to cure because it was directed to acts of other defendant doctors and did not mention Dr. Garcia at all, making it "no report" as to him); *see also Scoresby*, 346 S.W.3d at 558. Johnson's supplemental report was not merely deficient but was effectively "no report" as to Fung.

Likewise, Varon's report was timely served but not much else. Instead of opining that the Fischers' health care liability claim against Fung has merit and implicating Fung's conduct, the report opines that Fung's knowledge of critical information on which his liability hinges is "questionable," or it negates Fung's liability altogether based on information that he could not have known because, according to this same report, it was "intentionally concealed" from him. *Cf. Scoresby*, 346 S.W.3d at 557. Any breach of the standard of care discussed in Varon's report is entirely dependent on the pertinent information "available" to Fung and the "differential diagnoses known" to him; causation is similarly addressed with nothing but speculation. Because Varon's report opines that Fung's liability is either questionable or impossible, it does not actually allege any malpractice and is "no report" as to Fung. *Cf. id.* at 557, 559.

We conclude that as to Fung, neither Varon's report nor Johnson's supplemental report meets *Scoresby'*s minimal standard because their deficiencies could only be cured with entirely new reports based on changed facts. They are thus ineligible for the statutory extension, and the probate court abused its discretion in denying Fung's motion to dismiss. Accordingly, Fung's second issue is sustained. We reverse the probate court's order overruling Fung's objections to the

44

expert reports and denying Fung's motion to dismiss, render judgment granting Fung's motion to dismiss the Fischers' health care liability claim against him with prejudice, and remand this case for the probate court's determination of reasonable attorney's fees and costs. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b)(1).

## CONCLUSION

Having sustained Urukalo's, Minicucci's, and ADC's first issues, we reverse the probate court's three orders overruling these appellants' objections to the expert reports as untimely, vacate the three orders denying these appellants' motions to dismiss, and remand this case for the court's consideration of the merits of Urukalo's, Minicucci's, and ADC's objections and motions to dismiss.

Further, having sustained Fung's first and second issues, we reverse the probate court's order overruling Fung's objections to the expert reports, reverse the order denying Fung's motion to dismiss, render judgment dismissing the Fischers' health care liability claim against Fung with prejudice, and remand this case to the probate court for a determination of Fung's reasonable attorney's fees and costs under section 74.351(b)(1) of the civil practice and remedies code.

 

_____

Jeff Rose, Justice

Before Justices Puryear, Pemberton and Rose

Reversed and Remanded in part; Vacated and Remanded in part; Reversed and Rendered in part

Filed:   April 13, 2012